918 P.2d 17

**John DOE, Plaintiff–Appellant,**

v.

**ROMAN CATHOLIC DIOCESE OF BOISE, INC., Defendant–Appellee.**

**No. 16151.**

Court of Appeals of New Mexico.

April 26, 1996.

Certiorari Denied May 30, 1996.

**740**

Maryellen Duprel, Samuel M. Herrera, Taos, for Appellant.

Kenneth L. Harrigan, Timothy R. Van Valen, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for Appellee.

*OPINION*

DONNELLY, Judge.

Plaintiff appeals from an order of the trial court dismissing his complaint against the Roman Catholic Diocese of Boise, Inc. (Boise Diocese), based on a lack of personal jurisdiction. Plaintiff raises three issues on appeal. We consolidate and address these issues as follows: (1) whether the trial court erred in determining that Plaintiff failed to establish

that the Boise Diocese, a Roman Catholic diocese situated in Idaho, is subject to suit in New Mexico pursuant to this state's long-arm statute, NMSA 1978, Section 38–1–16 (Repl.Pamp.1987); and (2) whether the trial court abused its discretion in granting a protective order that restricted discovery by the parties to matters concerning the existence of personal jurisdiction over the Boise Diocese. For the reasons discussed herein, we affirm.

*FACTS*

On February 21, 1994, Plaintiff filed suit against Father Ruben I. Garcia, the Roman Catholic Archdiocese of Santa Fe, the Servants of the Paraclete, and the Boise Diocese, alleging sexual abuse and other tortious conduct by Father Garcia while serving as a priest in Las Vegas, New Mexico, during June 1975. Father Garcia was a Catholic priest who had previously been ordained and incardinated in the Boise Diocese. He later left the Boise Diocese with the permission of the bishop of that diocese to seek assignment as a priest elsewhere. Father Garcia contacted Archbishop James P. Davis of the Archdiocese of Santa Fe and requested that he be permitted to serve as a priest in New Mexico. Archbishop Davis agreed to permit Father Garcia to serve as a priest in Santa Fe. Subsequently, with the approval of the archbishop, Father Garcia was transferred to Socorro and then to Las Vegas, New Mexico. Following the initiation of his lawsuit, Plaintiff voluntarily dismissed his claim against the Servants of the Paraclete and later settled his claims against the Archdiocese of Santa Fe.

The Boise Diocese filed a motion to dismiss Plaintiff's claims against it based on lack of personal jurisdiction under SCRA 1986, 1–012(B)(2) (Repl.1992) (hereinafter Rule 1–012), and it also sought the issuance of a protective order limiting discovery to any matters related to its motion to dismiss. Following a hearing, the trial court granted the motion for a protective order.

In support of its motion to dismiss, the Boise Diocese filed affidavits and documents, including the affidavit of Reverend Dennis G. Falk, Vicar General of the Boise Diocese, Bishop Sylvester Treinen of the Boise Dio-

cese, and Randy Steiner, the financial officer of the Boise Diocese. Included in the additional materials submitted by the Boise Diocese was an affidavit from the Reverend John P. Beal, Assistant Professor in the Department of Canon Law at the Catholic University of America in Washington, D.C. In response, Plaintiff filed the affidavit of Father Thomas P. Doyle, a Catholic priest, together with certain documentary exhibits. Plaintiff's response to the Boise Diocese's motion to dismiss also included the affidavits of Father Liam J. Hoare and Father Peter Lechner, both Catholic priests. Thereafter, both sides submitted supplemental affidavits. Following a hearing on December 7, 1994, the trial court granted the Boise Diocese's motion to dismiss Plaintiff's claims against it, based on lack of personal jurisdiction. The present appeal does not involve Plaintiff's remaining claims against Father Garcia.

*JURISDICTIONAL ISSUES*

Plaintiff contends that the trial court erred when it failed to convert the Boise Diocese's motion to dismiss for lack of personal jurisdiction into a motion for summary judgment under SCRA 1986, 1–056 (Repl.1992). Plaintiff argues that because the parties submitted opposing affidavits relating to the question of personal jurisdiction, material disputed factual issues existed, precluding pretrial dismissal of his claims against the Boise Diocese under Rule 1–012(B)(2). Because the language of Rule 1–012 closely parallels that of its federal counterpart, Rule 12 of the Federal Rules of Civil Procedure, we find federal authority interpreting Rule 12 and discussing the applicable standard of review for evaluating a motion to dismiss instructive. *See Sundial Press v. City of Albuquerque,* 114 N.M. 236, 239, 836 P.2d 1257, 1260 (Ct.App.1992); *see also State v. Anderson,* 110 N.M. 382, 383, 796 P.2d 603, 604 (Ct.App.), *cert. denied,* 109 N.M. 232, 784 P.2d 419 (1989).

■ The proper procedural mechanism for challenging a court's exercise of personal jurisdiction over a party is through a motion to dismiss for lack of personal jurisdiction under Rule 1–012(B)(2). *See Sanchez v. Church of Scientology,* 115 N.M. 660, 663, 857 P.2d 771, 774 (1993); *Aetna Casualty &*

*Sur. Co. v. Bendix Control Div.,* 101 N.M. 235, 240, 680 P.2d 616, 621 (Ct.App.1984).

Plaintiff's complaint alleges that the Boise Diocese is subject to the personal jurisdiction of the New Mexico courts because it performed business in this state, because Father Garcia was employed by the Boise Diocese at the time he committed the tortious acts alleged in the complaint, and because Father Garcia was incardinated as a priest in the Boise Diocese and perpetrated his alleged acts in New Mexico while he was acting as an agent or employee of the Boise Diocese. In support of its allegation that the Boise Diocese transacted business in the state, Plaintiff strongly relies on Father Doyle's affidavit which states his opinion that Father Garcia was a temporary employee of the Archdiocese and that at the time of the commission of the alleged acts Father Garcia was acting as the Boise Diocese's agent in New Mexico. The affidavit of Father Doyle also indicated that Father Garcia was incardinated into the Boise Diocese and that under church law he owed continuing obedience to the bishop of that diocese.

Individuals or entities who are nonresidents of New Mexico may be subjected to the jurisdiction of our state courts under the long-arm statute when there is evidence that such individual or entity has engaged in certain enumerated acts within New Mexico. The long-arm statute, Section 38–1–16, provides in applicable part:

A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:

(1) the transaction of any business within this state;

. . . .

(3) the commission of a tortious act within this state;

. . . .

C. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action

in which jurisdiction is based upon this section.

 When a timely challenge is raised under Rule 1–012(B)(2) contesting the existence of personal jurisdiction, the party asserting jurisdiction has the burden of establishing such fact. *Smith v. Halliburton Co.,* 118 N.M. 179, 185, 879 P.2d 1198, 1204 (Ct. App.), *cert. denied* (N.M. May 16, 1994); *Aetna Casualty & Sur. Co.,* 101 N.M. at 240, 680 P.2d at 621. When ruling upon a motion to dismiss under Rule 1–012(B)(2), the trial court has discretion to permit discovery to help decide the issue or resolve the issue either upon written affidavits or through a pretrial evidentiary hearing. *Market/Media Research, Inc. v. Union–Tribune Pub. Co.,* 951 F.2d 102, 106 (6th Cir.1991), *cert. denied,* 506 U.S. 824, 113 S.Ct. 79, 121 L.Ed.2d 43 (1992); *Combs v. Bakker,* 886 F.2d 673, 676 (4th Cir.1989); *see also* 2A James Wm. Moore, *Moore's Federal Practice* ¶ 12.07, at 12–70 to 12–72 (2d ed. 1995). As observed by Professor Moore, the standard of proof for

> determining the motion [varies] depending on the method chosen to resolve it. If the district court chooses not to hold an evidentiary hearing, then the party asserting jurisdiction need only make a prima facie showing that jurisdiction exists....
>
> If a full evidentiary hearing is held, or if the jurisdictional issue is litigated at the trial, the party asserting jurisdiction must demonstrate it by a preponderance of the evidence.

Moore, *supra* ¶ 12.07, at 12–70 to 12–72 (footnotes omitted).

 Once the question of jurisdiction is properly raised, the burden of supporting the jurisdictional allegations is shifted to the party asserting jurisdiction, *Smith,* 118 N.M. at 185, 879 P.2d at 1204, although, if there is no evidentiary hearing, the burden is somewhat lessened in that the trial court will consider the affidavits in the light most favorable to the plaintiff. *American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir.1988). When a party contests the existence of personal jurisdiction under Rule 1–012(B)(2) and accompanies its motion with affidavits or depositions, however, the party resisting such

motion may not stand on its pleadings and must come forward with affidavits or other proper evidence detailing specific facts demonstrating that the court has jurisdiction over the defendant. *See Sanchez,* 115 N.M. at 663, 857 P.2d at 774; *State ex rel. Anaya v. Columbia Research Corp.,* 92 N.M. 104, 105, 583 P.2d 468, 469 (1978); *see also Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991).

 As observed in *Theunissen,* in deciding a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) "[t]he court's treatment ... mirrors in some respects the procedural treatment given to a motion for summary judgment under Rule 56. For example, the pleadings and affidavits submitted on a 12(b)(2) motion are received in a light most favorable to the plaintiff." *Theunissen,* 935 F.2d at 1459. Unlike a motion for summary judgment, however, where the factual assertions of the parties have been controverted, the trial court in its discretion may hold a pretrial evidentiary hearing to resolve the disputed jurisdictional factual issues. *Id.* If the trial court elects to hold a full evidentiary hearing or if the jurisdictional question is decided at trial, the party claiming the existence of personal jurisdiction must establish it by a preponderance of the evidence. *Metropolitan Life Ins. Co. v. Neaves,* 912 F.2d 1062, 1064 n. 1 (9th Cir.1990); *CutCo Indus., Inc. v. Naughton,* 806 F.2d 361, 364 (2d Cir.1986); *Data Disc, Inc. v. Systems Technology Assocs.,* 557 F.2d 1280, 1289 (9th Cir. 1977).

 In order to ascertain whether personal jurisdiction exists over an out-of-state defendant, our Supreme Court has approved a three-part test, inquiring whether (1) the acts of the defendant are specifically set forth in this state's long-arm statute, (2) the plaintiff's cause of action arises out of and concerns such alleged acts, and (3) the defendant's acts establish minimum contacts to satisfy constitutional due process concerns. *Federal Deposit Ins. Corp. v. Hiatt,* 117 N.M. 461, 463, 872 P.2d 879, 881 (1994); *Sanchez,* 115 N.M. at 663, 857 P.2d at 774; *Smith,* 118 N.M. at 185, 879 P.2d at 1204.

When a challenge has been made to a plaintiff's claim of personal jurisdiction, each case must be decided on the basis of its own facts. *See American Greetings Corp.*, 839 F.2d at 1169.

The third prong of the three-part test discussed in *Hiatt* recognizes that the Due Process Clause of the Fourteenth Amendment restricts the power of a state to assert in personam jurisdiction over an out-of-state defendant and limits the exercise of such jurisdiction to those situations where the defendant's contacts with the forum state are sufficient to satisfy constitutional due process concerns. *Hiatt*, 117 N.M. at 463, 872 P.2d at 881; *see also World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) (defendant's contacts must be "such that he should reasonably anticipate being haled into court" in the forum state). Similarly, this Court observed in *Visarraga v. Gates Rubber Co.*, 104 N.M. 143, 146, 717 P.2d 596, 599 (Ct. App.), *cert. quashed*, 104 N.M. 137, 717 P.2d 590 (1986), that

> "[t]he question of personal jurisdiction over out-of-state residents involves more than a technical 'transaction of any business' or the technical 'commission of a tortious act' within New Mexico. The meaning of those terms, in our statute, is to be equated with the minimum contacts sufficient to satisfy due process."

*Id.* (quoting *Tarango v. Pastrana*, 94 N.M. 727, 728, 616 P.2d 440, 441 (Ct.App.1980)).

■ To decide whether sufficient minimum contacts have been established under Section 38–1–16(A)(1) to satisfy due process concerns, the court examines, among other things, the " 'degree to which [a] defendant [has] purposefully initiated its activity within the State'." *Sanchez*, 115 N.M. at 664, 857 P.2d at 775 (quoting *Customwood Mfg., Inc. v. Downey Constr. Co.*, 102 N.M. 56, 57, 691 P.2d 57, 58 (1984)). The activity in question must constitute an act or acts whereby a defendant is shown to have " 'purposefully [availed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law[s].' " *Sanchez*, 115 N.M. at 664, 857 P.2d at 775 (quoting *Valley Wide Health Servs.,*

*Inc. v. Graham*, 106 N.M. 71, 73, 738 P.2d 1316, 1318 (1987), quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). "The purposeful activity requirement assumes that a defendant will not be subject to jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Sanchez*, 115 N.M. at 664, 857 P.2d at 775; *see also Hiatt*, 117 N.M. at 464, 872 P.2d at 882 (whether defendant purposefully availed itself of privilege of conducting business within this state involves determination of whether the activity in question amounts to a purposeful decision by defendant to participate in forum state and avail itself of the benefits and protections of New Mexico law). Resolution of the issue of whether Plaintiff has satisfied his burden of proof concerning personal jurisdiction also turns on whether Plaintiff has shown a significant "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977).

■ Applying the above rules to the record before us, we conclude that the trial court properly granted the motion to dismiss and that Plaintiff failed to make a prima facie showing supporting his jurisdictional allegations concerning the Boise Diocese.

Under the three-part test articulated in *Hiatt* and *Sanchez*, our examination of the affidavits and matters relied upon by Plaintiff fail to reveal any act by the Boise Diocese sufficient to establish requisite minimum contacts which would satisfy constitutional due process and subject the Diocese to suit within New Mexico. Plaintiff has failed to make a prima facie showing that the Boise Diocese purposely initiated any activity in New Mexico. *See Graham*, 106 N.M. at 73, 738 P.2d at 1318. It is undisputed that the Boise Diocese is a legal entity known as the Roman Catholic Diocese of Boise, incorporated as a nonprofit corporation in the State of Idaho, and that the Archdiocese of Santa Fe is a separately incorporated ecclesiastical entity. Further, as set forth in the Boise Diocese's answers to interrogatories, verified by Reverend Falk, both the Boise Diocese and the Archdiocese of Santa Fe are presided over by a different diocesan bishop or archbishop

and, under common law, both ecclesiastical leaders owe allegiance to the Pope. Plaintiff's complaint also acknowledges that the Archdiocese of Santa Fe and the Boise Diocese are incorporated separately in different states.

As shown by Reverend Falk's affidavit, the Boise Diocese has never owned any interest in, or leased or possessed, any real property in New Mexico, and has never maintained an office, agency, bank account, telephone listing, post office box, mailing address, or a registered agent for service of process in New Mexico. It is also undisputed that after Father Garcia's incardination in 1972, the Boise Diocese granted him permission in 1973 to leave Idaho to find an assignment in another diocese in the Southwest. Moreover, Plaintiff's affidavits and the matters relied upon in opposition to the motion to dismiss fail to show that the Boise Diocese played any role in Father Garcia's decision to come to New Mexico or that the Diocese requested that he be assigned or employed as a priest in New Mexico.

The fact that after the Boise Diocese gave Father Garcia permission to leave Idaho, Father Garcia subsequently selected New Mexico from among several other possible diocesan destinations in which to seek employment as a priest does not constitute a purposeful act by the Boise Diocese to avail itself of the benefits and protections of New Mexico law. Nor can the granting of such permission to leave Idaho be fairly said to constitute activity whereby the Boise Diocese could reasonably anticipate being haled into court in New Mexico for any and all tortious acts alleged to have subsequently been committed by Father Garcia. See Hiatt, 117 N.M. at 464, 872 P.2d at 882; see also Sanchez, 115 N.M. at 664, 857 P.2d at 775. Additionally, Plaintiff has failed to make a proper showing that the degree of control retained by the Boise Diocese over Father Garcia was sufficient to satisfy due process concerns and to subject the Diocese to the personal jurisdiction of the courts of New Mexico. Significantly, it is the acts of the Boise Diocese, not the acts of Father Garcia, that must provide the basis for this state exercising personal jurisdiction over the Boise Diocese. Sanchez, 115 N.M. at 663, 857 P.2d at 774; see also Visarraga, 104 N.M. at 147, 717 P.2d at 600.

▮▮▮▮▮ Plaintiff also points to evidence that the Boise Diocese paid the Servants of the Paraclete for care and treatment of Father Garcia several years following the commission of the alleged tort by Father Garcia. He argues this evidence, together with the other matters presented, was sufficient to constitute a prima facie showing that Father Garcia acted as an employee or agent of the Boise Diocese at the time of the commission of the alleged wrongful acts. We disagree. As a general rule, the existence of personal jurisdiction may not be established by events which have occurred after the acts which gave rise to Plaintiff's claims. See Steel v. United States, 813 F.2d 1545, 1549 (9th Cir. 1987).

In sum, the trial court properly concluded that Plaintiff failed to make a proper showing that the Boise Diocese had sufficient minimum contacts with this state to satisfy state or federal due process requirements.

### DISCOVERY ISSUES

Plaintiff also contends that the trial court's protective order that limited his discovery to matters relating to whether the Boise Diocese was subject to New Mexico's long-arm jurisdiction constitutes an abuse of discretion. We disagree. SCRA 1986, 1–026(C)(4) (Cum.Supp.1994) invests the trial court with the authority to reasonably limit discovery; therefore, it is incumbent upon Plaintiff to demonstrate that the limitation constituted an abuse of discretion so as to prejudice his case. See DeTevis v. Aragon, 104 N.M. 793, 797–98, 727 P.2d 558, 562–63 (Ct.App.1986); see also Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 64 (4th Cir.1993). As set forth by Moore, supra, ¶ 12.07[2], at 12–75 to 12–76:

Often the party asserting jurisdiction wishes to conduct discovery to help in establishing the facts relating to personal jurisdiction. The decision to permit or refuse discovery is within the discretion of the district court, and will not be disturbed on appeal unless there has been an abuse of that discretion. If proof by a preponderance of the evidence is required, such discovery should generally be allowed; on

the other hand, if only a prima facie case need be shown, discovery is generally unnecessary.

(Footnotes omitted.)

■ The trial court's order restricting Plaintiff's discovery to those matters relating to the threshold issue of whether the acts of the Boise Diocese were sufficient to subject it to trial in this state did not improperly serve to restrict Plaintiff from obtaining relevant information concerning whether the Boise Diocese had the requisite minimum contacts with New Mexico. Hence, the trial court's order did not constitute an abuse of its discretion. *See Roselli v. Rio Communities Serv. Station, Inc.*, 109 N.M. 509, 512, 787 P.2d 428, 431 (1990) (trial court abuses its discretion when decision is contrary to logic and reason); *see also Mylan Labs., Inc.*, 2 F.3d at 64.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's order of dismissal.

IT IS SO ORDERED.

APODACA, C.J., and FLORES, J., concur.