1998-NMCA-131

964 P.2d 855

**CAMPOS ENTERPRISES, INC., a New Mexico corporation, Gilbert Campos and Loretta Campos, Plaintiffs–Appellants,**

v.

**EDWIN K. WILLIAMS AND COMPANY, a/k/a New E.K.W., Inc., a foreign corporation, Defendant–Appellee,**

and

Tax and Business Service, Inc., a New Mexico corporation, Van Edwards, Lou Feltz, Norman Fletcher and John Doe Nos. I–X, Defendants.

No. 18570.

Court of Appeals of New Mexico.

Aug. 5, 1998.

Certiorari Denied Sept. 14, 1998.

Benjamin Silva, Jr., F. Barry McCabe, Silva, Rieder & Maestas, P.C., Albuquerque, for Plaintiffs-Appellants.

A. Drew Hoffman, Nickay B. Manning, Eastham, Johnson, Monnheimer & Jontz, P.C., Albuquerque, for Defendent-Appellee.

## OPINION

WECHSLER, Judge.

{1}    This case poses the questions of what acts by an out-of-state franchisor are sufficient to support a basis for personal jurisdiction over it, and whether the acts of a franchisee located in this state can be imputed to the franchisor to sustain personal jurisdiction over the franchisor.  We hold that the allega-

tions of Campos Enterprises, Inc. and Gilbert and Loretta Campos (Plaintiffs) concerning misconduct involving the franchisor Edwin K. Williams and Company (Defendant) based principally upon actions by the franchisee are insufficient to sustain personal jurisdiction under NMSA 1978, § 38–1–16 (1971) (long-arm statute).  Thus, we affirm the district court's dismissal of Defendant for lack of personal jurisdiction.

### Facts and Procedural Posture

{2}    Plaintiffs employed Tax and Business Service, owned originally by Norman Fletcher and later by William Van Edwards, to prepare Plaintiffs' personal and business federal and state income tax returns.  The business of Tax and Business Service included being a franchise of Defendant, an out-of-state national franchisor, which franchises "bookkeeping and business management systems and services to oil jobbers ..., retail petroleum marketing outlets and service station owners ... and other retail, wholesale and service business establishments."  Tax and Business Service also operated its business under the names "Edwin K. Williams & Co." and "EKW Systems" with its letterhead indicating it was a licensed office.

{3}    Tax and Business Service prepared Plaintiffs' tax returns for the years 1980 to 1993.  The Internal Revenue Service audited and assessed penalties and interest for both business and personal federal tax returns filed in 1991, 1992, and 1993.  Plaintiffs filed a complaint against the franchisor, Tax and Business Service, and Tax and Business Service's past and current owners alleging professional negligence, breach of express and implied contract, negligent infliction of emotional distress, intentional infliction of emotional distress, intentional spoliation of evidence, negligent spoliation of evidence, and conversion arising from the incorrect preparation of Plaintiffs' tax returns.  The district court granted Defendant's motion to dismiss Defendant for lack of personal jurisdiction on the basis of briefs, affidavits, and a motions hearing.  Plaintiffs appeal.

### Standard of Review

{4}    Relying on *Mark V, Inc. v. Mellekas,* 114 N.M. 778, 782, 845 P.2d 1232, 1236

(1993), Plaintiffs claim our standard of review is de novo. *Mark V, Inc.,* however, was not a case involving the question of whether the trial court is invested with personal jurisdiction over Defendant. Rather, it involved a contract dispute decided on summary judgment, which our Supreme Court reversed and remanded for an evidentiary hearing because of factual ambiguities. *See id.* at 779, 845 P.2d at 1233. Defendant directs us to the federal case of *Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56 (4th Cir.1993). Since the language of Rule 1–012 NMRA 1998 mirrors the language of Rule 12 of the Federal Rules of Civil Procedure, we find federal law instructive. *See Doe v. Roman Catholic Diocese of Boise, Inc.,* 1996–NMCA–057, 121 N.M. 738, 741, 918 P.2d 17, 20.

■ {5} According to *Mylan Laboratories, Inc.,* to the extent that a district court's conclusions concerning whether a plaintiff has proven personal jurisdiction rest upon legal precepts, those conclusions are reviewed on appeal de novo. *See Mylan Lab., Inc.,* 2 F.3d at 60; *see also Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1075 (10th Cir. 1995) (applying de novo standard to legal conclusions on motion to dismiss based upon personal jurisdiction). On the other hand, a district court's conclusions based upon findings of fact are not disturbed on appeal unless clearly erroneous. *See Mylan Lab., Inc.,* 2 F.3d at 60; *see also Amoco Rocmount Co. v. Anschutz Corp.,* 7 F.3d 909, 917 (10th Cir.1993) (question of fact on diversity jurisdiction reviewed under clearly erroneous standard). We believe that *Mylan Laboratories, Inc.* represents the appropriate standard when reviewing the dismissal of a defendant for personal jurisdiction based upon pleadings and affidavits.

### Plaintiffs' Burden

■ {6} Plaintiffs raise an additional argument concerning their burden. They contend that as to factual issues the district court incorrectly read the conflicting affidavits in a light most favorable to Defendant instead of giving Plaintiffs the benefit of any doubt. A party asserting jurisdiction has the burden of establishing the existence of juris-

diction when faced with a timely motion to dismiss under Rule 1–012(B)(2). *See Sanchez v. Church of Scientology,* 115 N.M. 660, 663, 857 P.2d 771, 774 (1993); *Smith v. Halliburton Co.,* 118 N.M. 179, 185, 879 P.2d 1198, 1204 (Ct.App.1994). The district court, within its discretion, may either "permit discovery to help decide the issue or resolve the issue either upon written affidavits or through a pretrial evidentiary hearing." *Doe,* 1996–NMCA–057, 121 N.M. at 742, 918 P.2d at 21. While Plaintiffs requested an evidentiary hearing, the district court decided the issue upon written affidavits, briefs, and oral argument. In the absence of an evidentiary hearing, the burden on a plaintiff "is somewhat lessened in that the trial court will consider the affidavits in the light most favorable to the plaintiff." *Id.* The plaintiff nonetheless continues to have the burden of coming forward with "specific facts demonstrating that the court has jurisdiction." *Id.* The district court did not misapply Plaintiffs' burden in this case. Plaintiffs failed to meet their burden because their complaint and affidavit did not set forth facts sufficient to bind the franchisor to the acts of the franchisee under the long-arm statute.

### Assertion of Personal Jurisdiction

■ {7} In order to assert personal jurisdiction over a non-resident defendant, Plaintiffs must establish that jurisdiction meets the three-part test articulated in *Doe.* Plaintiffs must show that (1) Defendant committed an act as defined in the long-arm statute, (2) Plaintiffs' cause of action arose out of and concerns such alleged act, and (3) Defendant has minimum contacts with New Mexico to satisfy due process concerns. *See id.; see also* § 38–1–16(A). The pertinent part of the long-arm statute states:

A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:

(1) the transaction of any business within this state;

. . . .

(3) the commission of a tortious act within this state.

Section 38–1–16(A)(1), (3).

### 1. *Transaction of any Business*

█ {8} While we agree that entering into a franchise agreement with a New Mexico resident requiring payment of royalties outside the state may be the "transaction of any business" contemplated by the long-arm statute, that fact alone is insufficient to establish personal jurisdiction. The alleged claims must arise from that transaction of business. *See id.; Doe,* 1996–NMCA–057, 121 N.M. at 742, 918 P.2d at 21; *see also Robinson–Vargo v. Funyak,* 1997–NMCA–095, ¶ 14, 123 N.M. 822, 945 P.2d 1040. Plaintiffs have not alleged that their causes of action arose from the franchise agreement Defendant had with Fletcher or Edwards or from Defendant's conduct in New Mexico. Their complaint states in pertinent part:

17. At all relevant times hereto, Defendants were in the business of preparing federal and state income tax returns in the course of their employment.

18. At all relevant times hereto, Defendants prepared Gilbert and Loretta Campos' personal income tax returns and the tax returns for Campos Enterprises, Inc.

. . . .

20. Defendants prepared both the Campos' personal income tax returns and the corporate returns for the tax years 1980 through 1993.

21. Plaintiffs have been subject to federal income tax audits of their personal and corporate returns solely as a result of the negligence and/or intentional acts of Defendants in preparing the Campos' personal income tax returns and the corporate tax returns.

. . . .

28. Defendants held themselves out to the public to be competent in the field of accounting and tax preparation.

. . . .

34. Plaintiffs expressly and impliedly contracted with Defendants to provide competent and reasonable accounting services, including accounting advice.

35. Defendants breached their respective contracts with Plaintiffs by, among other things, failing to prepare individual and corporate tax returns free from accounting or other errors.

Additionally, Loretta Campos submitted an affidavit which stated in part:

4. Both my individual tax returns and Campos Enterprises, Inc.'s tax returns were prepared utilizing E.K.W.'s tax preparation materials.

5. From 1980 through 1993 E.K.W. has given tax advice regarding my individual tax returns and Campos Enterprises, Inc.'s tax returns, including inventory accounting methods.

█ {9} Essentially, the pleadings and affidavit allegations rest on claims of faulty tax preparation. Neither the complaint nor the affidavit contains any allegations that the bookkeeping and business management systems supplied by Defendant were relied upon by Tax and Business Service for tax preparation. The complaint makes no mention of either bookkeeping or business management systems, which, rather than tax preparation, were the subject of the franchise agreement. The only remote reference to bookkeeping is a statement in Loretta Campo's affidavit to "inventory accounting methods." As we later discuss, this reference is insufficient to connect Defendant to the tax preparation activities Plaintiffs received.

{10} Plaintiffs refer us to the standard franchise agreement between Edwards and Defendant as a basis to support personal jurisdiction. Plaintiffs claim that statements requiring Edwards to complete "continuing education in taxation, accounting and other subjects related to the franchised business," to pay *additional fees to the franchisor for* "tax support services," and to comply with standard "EKW SYSTEMS" methods and procedures for record keeping and business management services are a sufficient basis to support personal jurisdiction.

{11} To the contrary, the franchise agreements between Fletcher and Edwards and Defendant prohibit the use of the "Ed-

win K. Williams" name in conjunction with tax preparation. The franchise agreement between Edwards and Defendant also states that the franchisor will not collect a royalty on any "tax preparation fees." Additionally, Defendant supplied an affidavit from a franchisor official which states that the provision for charging fees for "tax support services" was never used with any franchise in New Mexico, and that Defendant did not sell tax franchises or provide tax services in New Mexico. The franchisor's affidavit also states that Defendant "did not supply tax preparation materials for the preparation of Plaintiffs' tax returns," nor did it "provide tax advice for . . . Plaintiffs' tax returns." In the face of this affidavit and the express prohibitions of the franchise agreements, the language pointed to by Plaintiffs does not justify a conclusion that the district court's finding was clearly erroneous.

■ {12} Notwithstanding the absence of allegations that Defendant provided or supplied tax preparation service, advice, or materials to Plaintiffs or its franchises, the fatal flaw in Plaintiffs' position is their failure to connect their causes of action to activity of Defendant in New Mexico as mandated by the long-arm statute. *See* § 38–1–16(A). In their briefing in this appeal, Plaintiffs for the first time attempt to tie the bookkeeping and management systems provided by Defendant to improper procedures which led to the negligent tax advice by Tax and Business Service. They state that Defendant or its agents "negligently provided the inventory, bookkeeping, record-keeping and business management services which led to incorrect tax returns," and that Defendant "used and/or provided certain E.K.W. inventory, bookkeeping, accounting and tax preparation services, methods and procedures which the Campos allege led to improper deductions and improper tax returns." Had Plaintiffs made such allegations in the district court when Defendant had the opportunity to address them by affidavit, the course of proceedings may have been different. But no facts in the record support these statements, and Plaintiffs' counsel when specifically asked at appellate oral argument, could not factually support them. This Court " 're-view[s] the case litigated below, not the case

that is fleshed out for the first time on appeal.' " *Spectron Dev. Lab. v. American Hollow Boring Co.*, 1997–NMCA–025, ¶ 32, 123 N.M. 170, 936 P.2d 852 (quoting *In re T .B.*, 1996–NMCA–035, ¶ 13, 121 N.M. 465, 913 P.2d 272). As a court of review, we cannot review Plaintiffs' allegations which were not before the district court. *See Graham v. Cocherell*, 105 N.M. 401, 404, 733 P.2d 370, 373 (Ct.App.1987).

{13} Plaintiffs urge us to adopt the rationale of the Alaska Supreme Court in *Glover v. Western Air Lines, Inc.*, 745 P.2d 1365 (Alaska 1987) (per curiam), and extend personal jurisdiction over Defendant regardless of the relationship between the cause of action, the forum, and a defendant's contacts with the forum. In *Glover*, the court held that personal jurisdiction could be asserted over a franchisor for alleged negligence involving a rental car in Mexico because the franchisor collected fees from a franchise in Alaska. *See id.* at 1369. The court also noted that the franchisor advertised in publications which reached Alaskan consumers, and that the plaintiffs contended they relied upon such advertisements to purchase a vacation package which included a rental car in Mexico. *See id.* at 1370.

{14} The Alaska long-arm statute permits personal jurisdiction over a non-resident, irrespective of whether the cause of action arose in Alaska, if the defendant has "engaged in substantial and not isolated activities" in the state. Alaska Stat. § 09.05.015(a)(1)(D) (Michie 1996). The court stated that the franchisor's activity of collecting money "from a single local franchisee . . . is more than sufficient to characterize [the franchisor's] business activities within Alaska as 'substantial.' " *Glover*, 745 P.2d at 1368. The court also conducted a constitutional due process "minimum contacts" analysis and concluded that it would not be unfair to exercise personal jurisdiction over the franchisor. *See id.* at 1369. In doing so, the court recognized that other jurisdictions have reached the opposite conclusion in analogous factual scenarios, but recognized that these jurisdictions all have a more restrictive long-arm statute. *See id.* at 1369–70.

{15} We decline to adopt the result in *Glover* because of the significant difference between the Alaska and New Mexico long-arm statutes. The Alaska long-arm statute does not require the cause of action to arise from a defendant's contacts with the state. *Compare* Alaska Stat. § 09.05.015(a)(1)(D), *with* § 38–1–16(A). Courts in jurisdictions with similar statutes to New Mexico require that a defendant franchisor's contacts with the forum state be directly connected to the cause of action. *See White v. Arthur Murray, Inc.*, 549 P.2d 439, 440 (Utah 1976) (franchisor's occasional visits to the local franchise, provision of instructional materials, and collection of fees was insufficient to support jurisdiction for alleged fraud of the franchise because the allegations failed to show any involvement of the franchisor); *see also J.E.T. Adver. Assocs., Inc. v. Lawn King, Inc.*, 84 A.D.2d 744, 443 N.Y.S.2d 745, 747 (1981) (existence of a phone number and local franchises in state was insufficient to support personal jurisdiction in a contract dispute between franchisor and third-party). These jurisdictions with statutes similar to New Mexico do not extend jurisdiction over an out-of-state franchisor for an in-state franchise's alleged wrongdoing without more. *See J.E.T. Adver. Assocs., Inc.*, 443 N.Y.S.2d at 747; *White*, 549 P.2d at 440. They do not recognize the locations of a franchise in the state without additional indicia of contacts within the state as sufficient to support jurisdiction. *See Oddi v. Mariner–Denver, Inc.*, 461 F.Supp. 306, 310 (S.D.Ind.1978) (existence of franchises was only connection between franchisor and forum and was insufficient to support jurisdiction); *J.E.T. Adver. Assocs., Inc.*, 443 N.Y.S.2d at 747; *White*, 549 P.2d at 440. Our statute requires the same result.

## 2. *Commission of a Tortious Act*

■ {16} Plaintiffs also contend that personal jurisdiction should be exercised over Defendant because the company or its agents committed a tortious act in New Mexico. Just as with the "transaction of any business" subsection discussed above, the subsection of the long-arm statute concerning tortious conduct also requires that the cause of action arise from alleged tortious conduct

within the state in order to extend personal jurisdiction to an out-of-state defendant. *See* § 38–1–16(A); *cf. Smith*, 118 N.M. at 185–88, 879 P.2d at 1204–07 (successor parent corporation did not have sufficient minimum contacts with state to support personal jurisdiction in a negligence and products liability suit). Thus, unless a plaintiff can factually demonstrate a relationship between a franchisor and a franchise that connects the franchisor to the tortious act, whether that fact be an agency or otherwise, the statute is not satisfied. Courts of other jurisdictions with similar long-arm statutes are in accord. *See Odam v. Arthur Murray, Inc.*, 5 Kan.App.2d 612, 621 P.2d 453, 456 (1980) (franchisor-franchise relationship insufficient to support personal jurisdiction under a nearly identical long-arm statute where "there is nothing in [the] record to indicate that [the franchisor] engaged in any of the activities or transactions" in the complaint); *Drago v. Home Ins. Co.*, 486 So.2d 940, 942 (La.Ct.App.1986) (franchisor relationship insufficient to support jurisdiction when injury took place in another location and there was "no causal nexus between any advertising by [the franchisor] and the alleged tort"); *DelBello v. Japanese Steak House, Inc.*, 43 A.D.2d 455, 352 N.Y.S.2d 537, 540 (1974) (in action to rescind a franchise contract, advertisements in local newspaper, telephone calls, and subsequent mailings were insufficient to confer jurisdiction under the long-arm statute); *see also J.E.T. Adver. Assocs., Inc.*, 443 N.Y.S.2d at 747; *White*, 549 P.2d at 440.

■ {17} Nothing in Plaintiffs' complaint or affidavit in this case alleges any connection to the alleged tortious act on the part of the franchisor. The allegations of professional negligence and related tortious conduct are attributed to Tax and Business Service. The affidavit lists activities performed by the local franchisee. Exhibits attached to the affidavit include "E.K. Williams and Co." and "EKW Systems" letterhead and business cards with the words "licensee" or "licensed office." From the record before us, we cannot conclude that the district court's ruling that the franchisor did not engage in tax preparation or tax-related-support services in New Mexico is clearly erroneous.

### 3. Agency

{18} Lastly, we address Plaintiffs' argument that an agency relationship existed between Defendant and the local franchise, such that the franchisees were acting as agents of Defendant. While an agency relationship may serve to establish personal jurisdiction over the principal based upon the acts of the agent, *see* § 38–1–16(A), Plaintiffs have not established the existence of an agency relationship in the complaint or the affidavit. To the contrary, the franchise agreement specifically states that the franchisee is an independent contractor. The franchisor is not allowed to exert control over day-to-day operations of the franchise. The existence of a franchisor-franchisee relationship alone is insufficient to create a principal-agent relationship. *See Odam,* 621 P.2d at 456; *DelBello,* 352 N.Y.S.2d at 540.

### Conclusion

{19} For the reasons discussed above, we affirm the district court's order granting Defendant's motion to dismiss for lack of personal jurisdiction.

{20} **IT IS SO ORDERED.**

DONNELLY, and BOSSON, JJ., concur.