# RECORD IMPOUNDED

## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0372-22

D.T.,

      Plaintiff-Appellant,

v.

ARCHDIOCESE OF
PHILADELPHIA and
MICHAEL J. MCCARTHY,

      Defendants-Respondents.

_____

> **APPROVED FOR PUBLICATION**
>
> **December 7, 2023**
>
> **APPELLATE DIVISION**

Argued October 10, 2023 – Decided December 7, 2023

Before Judges Gilson, Berdote Byrne, and Bishop-Thompson.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1327-20.

Ruxandra M. Laidacker argued the cause for appellant (Kline & Specter, PC, attorneys; Charles L. Becker, David K. Inscho, Lorraine H. Donnelly, and Ruxandra M. Laidacker, on the briefs).

Nicholas M. Centrella argued the cause for respondent Archdiocese of Philadelphia (Clark Hill PLC, attorneys; Nicholas M. Centrella, on the brief).

The opinion of the court was delivered by

GILSON, P.J.A.D.

Plaintiff D.T. alleges that Michael McCarthy, a former Catholic priest, sexually abused him in New Jersey in 1971.[1] At that time, plaintiff was fourteen years old, and McCarthy was serving as a priest and teacher in the Archdiocese of Philadelphia (the Archdiocese). Plaintiff appeals from an order dismissing his claims against the Archdiocese for lack of personal jurisdiction. Because there are no facts establishing that the Archdiocese purposefully availed itself of any benefits in or from New Jersey related to McCarthy's alleged abuse of plaintiff, we affirm.

I.

We discern the facts from the record developed during jurisdictional discovery. The Archdiocese is an unincorporated, religious, non-profit association that operates in Pennsylvania. Its principal place of administration is in Philadelphia, and it oversees Catholic parishes in five Pennsylvania counties. The Archdiocese does not oversee or operate any churches, parishes, or religious facilities in New Jersey. It also does not assign priests to any parishes in New Jersey.

---

[1] Plaintiff used his initials in his complaint. We use initials to protect privacy interests concerning allegations of child sexual abuse. See R. 1:38-3(c)(9).

A-0372-22

The Archdiocese does not currently own any real property in New Jersey. In the past, the Archdiocese did own several properties in New Jersey that were given to it, but those properties were sold before 2013. The Archdiocese also owned and operated two properties in Ventnor, New Jersey, which it used as vacation homes for priests. The Ventnor properties were acquired in 1963 and sold in 2012 and 2013.

McCarthy began working as a parish priest and teacher for the Archdiocese in 1965. From 1965 to 1989, he taught at Cardinal O'Hara High School in Springfield, Pennsylvania. McCarthy lived at the St. Bernadette Parish in Drexel Hill, Pennsylvania, from 1965 to 1975, where he also served as a priest.

It was while McCarthy was serving as a priest in Drexel Hill, Pennsylvania, that he came to know plaintiff and plaintiff's family. In 1971, McCarthy counseled plaintiff's family when plaintiff's parents decided to renew their wedding vows and baptize plaintiff's father as part of the ceremony. McCarthy also ministered to the family when plaintiff's father became ill and died in 1971. At that time, McCarthy offered to mentor plaintiff, who was then fourteen years old.

A-0372-22

In July 1971, McCarthy invited plaintiff to go with him to a home McCarthy used in Margate, New Jersey.[2]  Plaintiff's mother gave permission, and McCarthy and plaintiff then drove to the Margate home.  When they arrived, plaintiff alleges that McCarthy showed him pornography, encouraged him to drink alcohol, and sexually assaulted him.

Plaintiff also alleges that the Archdiocese was "on notice" of McCarthy's propensity for sexually abusing young boys beginning in 1986.  McCarthy resigned as a parish priest in 1993.  The following year, the Archdiocese placed McCarthy on leave, and in 2003, McCarthy retired from serving as a priest.

In 2005, a Philadelphia grand jury issued a report concerning sexual abuse of minors by priests in the Archdiocese.  McCarthy was identified as one of the perpetrators.  The report stated that the Archdiocese received allegations of sexual abuse by McCarthy in 1986, 1991, and 1992.  The report also included summaries of witnesses' testimony, several of whom described sexual abuse by McCarthy at the home in Margate.[3]  The following year, in 2006, the

---

[2]  The record is not entirely clear, but one of McCarthy's relatives appears to have originally owned the home in Margate.  McCarthy purchased the home in 1973.  It is undisputed that the Archdiocese did not own or conduct any activities at the home in Margate.

[3]  The Archdiocese contends that the grand jury report is hearsay and should not be considered.  We deem the report relevant discovery related to the question of

Archdiocese "laicized" McCarthy; meaning that McCarthy was dismissed from the clerical state and lost all rights and obligations associated with ordination. Glossary of Terms, The Diocese of Springfield, Mass., https://diospringfield.org/osevaglossaryofterms/ (last visited Nov. 30, 2023) (defining "laicization").

In May 2020, plaintiff filed this complaint against McCarthy and the Archdiocese in New Jersey. Plaintiff alleged that defendants negligently provided pastoral services to him when McCarthy sexually abused plaintiff in New Jersey. Plaintiff also contended that the Archdiocese was vicariously liable for McCarthy's tortious acts and that the Archdiocese was negligent in hiring and supervising McCarthy. In addition, plaintiff asserted a claim for assault and battery against McCarthy.

In November 2020, the trial court granted the Archdiocese's motion to dismiss plaintiff's claims against it for lack of personal jurisdiction. The court also denied plaintiff's request for jurisdictional discovery.

We granted plaintiff's motion for leave to appeal and, on January 11, 2021, summarily vacated and reversed the trial court's order of November 17, 2020.

---

personal jurisdiction over the Archdiocese. In doing so, we take no position on whether the report is hearsay or whether it would be admissible for other purposes.

A-0372-22

We remanded the matter so that jurisdictional discovery could be conducted. Order on Motion, <u>D.T. v. Archdiocese of Phila.</u>, No. 0188-20 (App. Div. Jan. 11, 2021). The Supreme Court denied the Archdiocese's motion for leave to appeal.

On remand, the parties conducted jurisdictional discovery. Thereafter, the Archdiocese again moved to dismiss the claims against it for lack of personal jurisdiction. On December 6, 2021, the trial court entered an order granting that motion. The court also entered an order granting the Archdiocese's motion to dismiss McCarthy's crossclaims against it.

On January 14, 2022, we granted plaintiff's second motion for leave to appeal and summarily vacated the trial court's December 6, 2021 order. Order on Motion, <u>D.T. v. Archdiocese of Phila.</u>, No. 1234-21 (App. Div. Jan. 14, 2022). We remanded the matter and directed the trial court to "create a proper record" concerning the Archdiocese's ownership of property in New Jersey. In the order, we stated in relevant part:

> After receiving competent proofs regarding [the Archdiocese's ownership of real property in New Jersey], the [trial] court shall [then] reconsider its decision based on this fully developed record and address whether the nature and extent of the Archdiocese's past ownership of property in New Jersey, during relevant time periods, shows that the

6

Archdiocese purposefully availed itself of the privilege of conducting activities with New Jersey.

Thereafter, we denied the Archdiocese's motion for reconsideration, and the Supreme Court denied the Archdiocese's motion for leave to appeal.

Following the second remand, the parties conducted additional discovery concerning the Archdiocese's former ownership of property in New Jersey. The Archdiocese produced records and submitted a certification from a representative of its Office of Property Services that described the real property the Archdiocese had previously owned in New Jersey. That discovery established that plaintiff had never been to any of those New Jersey properties and there was no evidence that McCarthy had ever sexually assaulted plaintiff at any of those properties.

The Archdiocese then moved for a third time to dismiss the claims against it for lack of personal jurisdiction. On August 19, 2022, the trial court issued an order and a statement of reasons granting that motion. The trial court found that the Archdiocese's past ownership of property in New Jersey did not constitute purposeful availment of any benefit from New Jersey related to McCarthy's alleged sexual abuse of plaintiff. The trial court also found that the Archdiocese had not purposefully availed itself of any benefit in New Jersey related to plaintiff's allegations because those allegations "only involve[d] the

7

unilateral act[s] of [McCarthy]" and did not involve deliberate conduct by the Archdiocese. In its written decision, the trial court also rejected plaintiff's "agency" theory of jurisdiction, finding that there was "no credible evidence the Archdiocese's supervisory activities purposefully targeted New Jersey." In addition, the trial court found that plaintiff's claims did not arise out of or relate to any contact the Archdiocese had with New Jersey.

Thereafter, plaintiff moved for, and we granted, leave to appeal the August 19, 2022 order dismissing the claims against the Archdiocese for lack of personal jurisdiction. Plaintiff's claims against McCarthy are still pending.

## II.

On appeal, plaintiff makes two arguments. First, he contends that the Archdiocese is subject to specific jurisdiction in New Jersey through the actions of McCarthy, who was an "agent" of the Archdiocese. In that regard, plaintiff asserts that the Archdiocese "purposefully availed itself of the privilege of conducting activities in New Jersey through the conduct of priests like McCarthy." Plaintiff goes on to contend that McCarthy's "pastoral and mentoring activities" were not beyond the scope of the agency the Archdiocese conferred on him as a priest. Second, plaintiff argues that the trial court erred when it focused only on McCarthy's abusive actions in New Jersey.

A-0372-22

Having considered these arguments in light of the record and governing law, we reject them. The facts disclosed during jurisdictional discovery established that the Archdiocese is not subject to jurisdiction in New Jersey because it did not purposefully avail itself of activities in New Jersey sufficient to satisfy the "minimum contacts" required for personal jurisdiction. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316-17 (1945).

A.    The Law Concerning Personal Jurisdiction.

Personal jurisdiction is a "'mixed question of law and fact' that must be resolved at the outset, 'before the matter may proceed.'" Rippon v. Smigel, 449 N.J. Super. 344, 359 (App. Div. 2017) (quoting Citibank, N.A. v. Est. of Simpson, 290 N.J. Super. 519, 532 (App. Div. 1996)). We review a trial court's findings of fact with respect to jurisdiction "to determine if those findings are supported by substantial, credible evidence in the record," but conclusions of law are reviewed de novo. Id. at 358. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

"A New Jersey court may exercise in personam jurisdiction over a non-resident defendant 'consistent with due process of law.'" Bayway Refin. Co. v.

State Utils., Inc., 333 N.J. Super. 420, 428 (App. Div. 2000) (quoting R. 4:4-4(b)(1)). New Jersey courts "exercise jurisdiction over non[-]resident defendants 'to the uttermost limits permitted by the United States Constitution.'" Jardim v. Overley, 461 N.J. Super. 367, 377 (App. Div. 2019) (quoting Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971)).

To be subject to personal jurisdiction in a forum state, due process requires that the non-resident defendant "have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co., 326 U.S. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)); Blakey v. Cont'l Airlines, Inc., 164 N.J. 38, 65 (2000). "[T]he requisite quality and quantum of contacts is dependent on whether general or specific jurisdiction is asserted." Citibank, 290 N.J. Super. at 526. General jurisdiction "requires affiliations 'so "continuous and systematic" as to render'" a non-resident organizational defendant "'essentially at home in the forum State.'" Daimler AG v. Bauman, 571 U.S. 117, 133 n.11 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). The parties agree that the Archdiocese is not subject to general jurisdiction in New Jersey. Accordingly, we focus on whether there is specific jurisdiction.

A-0372-22

To determine whether a non-resident defendant may be subject to specific personal jurisdiction, courts examine the "relationship among the defendant, the forum, and the litigation." Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). "In order for a state court to exercise [specific] jurisdiction over a non[-]resident defendant, the lawsuit 'must aris[e] out of or relat[e] to the defendant's contacts with the forum.'" Jardim, 461 N.J. Super. at 376 (third and fourth alterations in original) (quoting Daimler, 571 U.S. at 127); accord Waste Mgmt., Inc. v. Admiral Ins. Co., 138 N.J. 106, 119 (1994), cert. denied, 513 U.S. 1183 (1995); see also Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., 592 U.S. ___, 141 S. Ct. 1017, 1025 (2021).

"The 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." Lebel, 115 N.J. at 323 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)); see also Waste Mgmt., 138 N.J. at 126 (explaining that "the existence of minimum contacts turns on the presence or absence of intentional acts of the defendant to avail itself of some benefit of a forum state"). The contacts "must be the defendant's own choice and not 'random, isolated, or fortuitous.'" Ford, 141 S. Ct. at 1025 (quoting Keeton v.

11

Hustler Mag., Inc., 465 U.S. 770, 774 (1984)). Moreover, courts determine, based on the defendant's "'conduct and connection' with the forum state . . . whether the defendant should 'reasonably anticipate being haled into court [in the forum state].'" Bayway Refin., 333 N.J. Super. at 429 (alteration in original) (quoting World-Wide Volkswagen, 444 U.S. at 297).

In determining whether the requirement to comport with "fair play and substantial justice" is satisfied, courts evaluate several factors. Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 113 (1987). A court "must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." Ibid. A court must also weigh "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." Ibid. (quoting World-Wide Volkswagen, 444 U.S. at 292).

B.    The Lack of Specific Jurisdiction Over the Archdiocese.

Neither the Archdiocese's former ownership of properties in New Jersey nor its supervision over McCarthy as one of its priests established specific jurisdiction over the Archdiocese in New Jersey related to McCarthy's alleged sexual abuse of plaintiff in New Jersey.

A-0372-22

1.    The Archdiocese's Former Ownership of Property in New Jersey.

There is no evidence that the Archdiocese's former ownership of real properties in New Jersey had any relation to plaintiff's allegation of abuse by McCarthy.  Plaintiff has certified that he was abused by McCarthy at a private home McCarthy was using in Margate, New Jersey in 1971.  The Archdiocese's former ownership of other properties in New Jersey was not related to McCarthy's use of the home in Margate.  Nor did plaintiff allege that McCarthy used the former properties to sexually abuse plaintiff.  Specific jurisdiction requires "a connection between the forum and the specific claims at issue." Bristol-Myers Squibb Co. v. Superior Ct., 582 U.S. 255, 265 (2017).

The facts of Doe 1 v. Archdiocese of Phila., in which the Law Division held the Archdiocese had the requisite minimum contacts with New Jersey to confer personal jurisdiction, are distinguishable.  461 N.J. Super. 406 (Law Div. 2019).  In Doe 1 the Law Division took judicial notice that, from 1963 to 2013, the Archdiocese owned properties in Ventnor and that the Diocese of Trenton, New Jersey was "partners" with the Pennsylvania seminary that the priest alleged to have abused Doe 1 attended.  Id. at 424.  The court also noted the Archdiocese's property was "located only a few miles from the alleged location of the abuse."  Ibid.  Unlike in Doe 1, there is no evidence in this record that

13                                                                    A-0372-22

plaintiff's parish was "partnered" with any New Jersey diocese or parish. Further, there is no indication that any sexual abuse of plaintiff occurred at the Archdiocese's properties. In short, the Archdiocese's former ownership of property, absent a connection to plaintiff's cause of action, is insufficient to establish personal jurisdiction.

2. The Archdiocese's Supervision and Employment of McCarthy.

There is no evidence that the Archdiocese controlled, supervised, or was even aware of McCarthy's alleged sexual assault of plaintiff in New Jersey. The record does not contain any evidence that the Archdiocese had been notified of McCarthy's attraction to young boys in or before 1971. Indeed, plaintiff concedes that the Archdiocese was first on notice of McCarthy's propensity to sexually abuse young boys in 1986.

Moreover, there was no evidence that the Archdiocese knew of, approved, or sanctioned McCarthy taking plaintiff to a private home in Margate. Accordingly, there is no evidence demonstrating that the Archdiocese purposefully availed itself of any benefit or activity in New Jersey in connection with plaintiff's allegations against McCarthy.

We reject plaintiff's agency argument because the facts do not support it. Plaintiff contends the Archdiocese employed and controlled McCarthy at all

14

times when he was a priest of the Archdiocese. Plaintiff then argues that McCarthy was counseling and ministering to plaintiff when he brought him to New Jersey and sexually assaulted him.

Initially, we note that determining personal jurisdiction is a separate question from determining vicarious liability. See Ford, 141 S. Ct. at 1026 (explaining that the United States Supreme Court has "never framed the specific jurisdiction inquiry as always requiring proof of causation—i.e., proof that the plaintiff's claim came about because of the defendant's in-state conduct"). Nevertheless, the authorized acts of an agent can establish personal jurisdiction over the principal. See Daimler, 571 U.S. at 135 n.13.

To hold a principal vicariously liable for an agent's tortious conduct, the agent must be acting within the scope of his or her employment and responsibilities. Haviland v. Lourdes Med. Ctr. of Burlington Cnty., Inc., 250 N.J. 368, 378 (2022); Abbamont v. Piscataway Twp. Bd. of Educ., 138 N.J. 405, 416 (1994). "An employee is acting within the scope of employment if the action is 'of the kind'" that the employee is hired to perform; "it occurs substantially within the authorized time and space limits;" and "it is actuated, at least in part, by a purpose to serve the [employer]." Abbamont, 138 N.J. at 416 (quoting Di Cosala v. Kay, 91 N.J. 159, 169 (1982)).

15

If an agent is acting outside the scope of his or her employment, the employer may be held vicariously liable if it "delegates the authority to control the work environment to a supervisor and that supervisor abuses that delegated authority." Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 620 (1993). That inquiry requires the factfinder to determine that: "(1) the employer gave the authority to the supervisor to control the situation about which the plaintiff complains; (2) the supervisor exercised that authority; (3) the exercise of authority resulted in a violation . . . ; and (4) the authority delegated by the employer to the supervisor aided the supervisor in injuring the plaintiff." Hardwicke v. Am. Boychoir Sch., 188 N.J. 69, 101-02 (2006).

Moreover, that individuals may be agents for one purpose, does not mean that they are agents for every purpose. See Daimler, 571 U.S. at 135; see, e.g., Thompson v. Roman Cath. Archbishop of Wash., 735 F. Supp. 2d 121, 129-30 (D. Del. 2010) (explaining that a priest did not act within the scope of his employment because he performed the claimed act of sexual abuse for his own gratification and not at the direction of the diocese); Doe v. Liberatore, 478 F. Supp. 2d 742, 758 (M.D. Pa. 2007) (stating that it is "clear that [the priest's] sexual molestation of [p]laintiff was not within the scope or nature of his employment as a priest").

McCarthy was not acting within the scope of his responsibilities as a priest when he sexually assaulted plaintiff. In addition, in 1971, the Archdiocese had no knowledge of prior sexual assaults by McCarthy, and, therefore, at least at that time, would have had no reason to restrict or strip him of his priestly duties. Further, there is no evidence that the Archdiocese delegated to McCarthy the authority to control plaintiff by counseling and ministering to plaintiff in his private home in New Jersey. Instead, the facts establish that plaintiff's mother gave McCarthy permission to take plaintiff to the home in Margate.

In reaching this holding, we have considered the New Jersey Legislature's 2019 enactment of the Child Victims Act (CV Act). L. 2019, c. 120. The CV Act provides a two-year revival window for victims to file otherwise time-barred claims for sexual abuses committed against them while minors. N.J.S.A. 2A:14-2b(a). The CV Act also amended the Charitable Immunity Act to allow retroactive liability against religious and other charitable organizations. N.J.S.A. 2A:53A-7(c); N.J.S.A. 2A:14-2b(b). While the CV Act evidences New Jersey's strong public policy to protect and compensate children who were sexually abused, the CV Act does not change the federal constitutional due process protections concerning personal jurisdiction. Accordingly, to sue a non-

resident defendant in New Jersey, the non-resident defendant must still be subject to personal jurisdiction in New Jersey.

Our holding is also consistent with rulings by other courts that have considered whether Catholic dioceses, including the Archdiocese, are subject to personal jurisdiction because of alleged sexual abuses committed by priests.[4] Like this case, those cases depended on the specific jurisdictional facts involved. The facts in this case are analogous to the facts in the cases that have held there is no personal jurisdiction. See Cath. Diocese of Green Bay, Inc., v. John Doe 119, 349 P.3d 518 (Nev. 2015) (holding there was no personal jurisdiction over the Catholic Diocese of Green Bay because the priest alleged to have committed sexual abuse unilaterally sought employment in Nevada and the Diocese did not maintain control or supervision over the priest's day-to-day work); Tercero v. Roman Cath. Diocese of Norwich, 48 P.3d 50 (N.M. 2002) (concluding there was no jurisdiction over the non-resident Diocese of Norwich because at the time of the alleged abuse, the Diocese had little, if any, connection to, participation with, or control over the priest or the treatment center it had sent him to for therapy); Archdiocese of Detroit v. Green, 899 So. 2d 322 (Fla. Dist.

---

[4] The parties cite to several unpublished opinions. We, however, do not rely on or cite to unpublished opinions because they do not constitute binding precedent. R. 1:36-3.

Ct. App. 2004) (finding no basis for jurisdiction on an agency theory when a priest unilaterally moved to Florida and the Diocese later gave permission for his incardination without any knowledge of the allegations of sexual misconduct); <u>Doe v. Roman Cath. Diocese of Boise, Inc.</u>, 918 P.2d 17 (N.M. Ct. App. 1996) (holding the Diocese of Boise was not subject to suit in New Mexico because giving a priest permission to leave Idaho without retaining any control over his ministerial duties did not constitute a purposeful act).

By contrast, the facts of this case are distinguishable from the facts in cases where courts have found personal jurisdiction. <u>See Archdiocese of Milwaukee v. Superior Ct.</u>, 5 Cal. Rptr. 3d 154 (Cal. Ct. App. 2003) (finding personal jurisdiction where the Milwaukee Archdiocese excardinated a priest convicted of sexual perversion in Wisconsin and knowingly facilitated his incardination in California despite the risk of harm to young boys); <u>John Does 1—9 v. Compcare, Inc.</u>, 763 P.2d 1237 (Wash. Ct. App. 1988) (holding personal jurisdiction existed where the Diocese of Lafayette in Louisiana relocated a priest it had suspended for sexual misconduct with minors for treatment at a Jesuit House in Spokane to avoid harmful publicity and additional legal consequences stemming from his pedophiliac problems).

Finally, we also reject plaintiff's vague contentions concerning sexual abuses by other priests of the Archdiocese. Initially, we note that there is no evidence or even an allegation that activities by other priests affected plaintiff. More critically, as we have analyzed, to establish specific jurisdiction in this case, plaintiff must establish that the Archdiocese purposefully availed itself of benefits from New Jersey related to McCarthy's alleged sexual abuse of plaintiff. Non-specific allegations about sexual abuse of other children by other priests of the Archdiocese do not provide such proof.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0372-22