**Certiorari Denied, August 18, 2016, No. S-1-SC-35998**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2016-NMCA-075**

**Filing Date: June 16, 2016**

**Docket No. 33,481**

**W.J. HOLCOMB and**
**SHARON HOLCOMB,**
**Husband and Wife,**

      **Plaintiffs/Counterdefendants and**
      **Appellees/Cross-Appellants,**

**v.**

**AVEDON RODRIGUEZ a/k/a AVEDON**
**ORLANDO RODRIGUEZ, a/k/a ORLANDO**
**AVEDON RODRIGUEZ, and THERESA R. MARTINEZ,**

      **Defendants/Counterplaintiffs and**
      **Appellants/Cross-Appellees.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Sandra A. Price, District Judge**

Sommer, Udall, Sutin, Hardwick & Hyatt, P.A.
Eric M. Sommer
Santa Fe, NM

for Appellees/Cross-Appellants

Chris Lucero, Jr.
Albuquerque, NM

for Appellants/Cross-Appellees

**OPINION**

**HANISEE, Judge.**

1

**{1}** A jury found in favor of W.J. and Sharon Holcomb (Plaintiffs) on their trespass claims against Avedon Rodriguez and Theresa Martinez (Defendants). Defendants appeal, raising six claims of error. Plaintiffs cross-appeal the district court's refusal to set Plaintiffs' award of post-judgment interest at a rate of 15 percent per annum. We reject all of Defendants' arguments and agree with Plaintiffs that the district court abused its discretion by refusing to award post-judgment interest in the amount required by statute. We therefore reverse and remand with instructions to modify the rate of post-judgment interest, but leave the district court's judgment undisturbed in all other respects.

## BACKGROUND

**{2}** Plaintiffs own land that lies directly adjacent to Defendants' land to the north. A wash runs southwest across Plaintiffs' western tract, crossing Defendants' land before emptying into the nearby San Juan River. Plaintiffs erected a fence running east to west along their driveway. The fence starts near Plaintiffs' house on the far western end of their property and ends where the wash crosses onto Defendants' property.

**{3}** In November 2008, Defendant Rodriguez hired Lucas Lucero to channel the wash with earthmoving equipment. Lucero used the equipment to create berms that narrowed and deepened the wash. Without Plaintiffs' permission, Lucero channeled portions of the wash on Plaintiffs' property near their driveway and performed other earthwork on the far eastern boundary of Plaintiffs' land.

**{4}** On February 5, 2009, Plaintiffs filed a complaint against Defendants seeking injunctive relief and damages arising from claims for common law trespass and violations of criminal trespass under NMSA 1978, Section 30-14-1(D) (1995).[1] Defendants answered and counterclaimed against Plaintiffs for trespass, criminal trespass, and to quiet title against Plaintiffs based on allegations that Plaintiffs had cleared vegetation and constructed a fence on Defendants' property. In June 2009, Plaintiffs hired a civil engineer to evaluate the potential for flooding as a result of Lucero's channel work. The civil engineer concluded that in the event of flooding, Lucero's modifications to the channel would cause the banks of the wash that supported Plaintiffs' driveway to erode. In 2010 flooding from rain storms caused significant erosion of the channel banks supporting a portion of Plaintiffs' driveway. As a result, Plaintiffs hired a professional design firm and a contractor to stabilize the banks of the channel and to install diversion screens to prevent further flood damage.

---

[1]Section 30-14-1(D) provides that "[a]ny person who enters upon the lands of another without prior permission and injures, damages or destroys any part of the realty or its improvements, including buildings, structures, trees, shrubs or other natural features, is guilty of a misdemeanor, and he shall be liable to the owner, lessee or person in lawful possession for civil damages in an amount equal to double the value of the damage to the property injured or destroyed."

**{5}** The district court held a jury trial from April 2 through April 5, 2013. At the close of Defendants' case, Plaintiffs orally moved for a directed verdict on Defendants' counterclaims for trespass, arguing that both entry and damages were necessary elements of a claim for trespass and that Defendants had not offered any evidence that could support a finding in Defendants' favor on either element.

**{6}** Defendants responded that the jury could find that Plaintiffs had entered Defendants' property based on the testimony of a surveyor and the results of a survey he performed that showed that Plaintiffs' fence was built on Defendants' property. As to damages, Defendants conceded that they had presented no evidence that would allow a jury to fix a dollar amount on the cost of removing and restoring damage to their property caused by the fence, but that photographic evidence showing that Plaintiffs had removed vegetation from Defendants' land while installing the fence was sufficient to submit the trespass claim to the jury for a determination of liability and damages.

**{7}** The district court granted Plaintiffs' motion for a directed verdict on Defendants' counterclaims for trespass, agreeing with Plaintiffs that Defendants had failed to prove that Plaintiffs' alleged trespass had caused Defendants to suffer any damages. The jury then returned a verdict in Plaintiffs' favor on their common law trespass claim and awarded damages of $33,506.40.[2] The parties submitted post-trial briefs on Defendants' counterclaim to quiet title to the boundary between the parties' properties, after which the district court ruled in Plaintiffs' favor and found that the boundary between the parties' properties was that described in a survey performed by a surveyor hired by Plaintiffs. The district court entered a final judgment against Defendants, awarding Plaintiffs $33,506.40 and quieting title to the boundary line between the parties' properties.

**{8}** Defendants appeal the district court's judgment, raising the following six claims of error:

> 1. The jury, not the district court, should have fixed the boundary between Plaintiffs' and Defendants' land;

> 2. The district court erred in granting a directed verdict on Defendants' counterclaims for trespass against Plaintiffs;

> 3. The district court should have submitted a jury instruction modeled after NMSA 1978, Section 30-14-6 (1979) on Plaintiffs' trespass claims;

> 4. There was insufficient evidence of damages to support the jury's verdict against Defendants on Plaintiffs' trespass claims;

---

[2]Plaintiffs voluntarily dismissed their claim for criminal trespass under Section 30-14-1(D).

3

5. The district court abused its discretion by awarding prejudgment interest to Plaintiffs; and

6. The district court lacked jurisdiction over Plaintiffs' trespass claims because Defendants enjoyed a prescriptive easement over the area of the alleged trespass.

**{9}** Plaintiffs cross-appeal the rate at which the district court awarded post-judgment interest, arguing that 15 percent, rather than 8.75 percent, is the required rate under NMSA 1978, Section 56-8-4(A)(2) (2004), which applies to judgments awarding damages caused by tortious conduct.

## DISCUSSION

### 1. The District Court Did Not Err in Adjudicating the North-South Boundary Between the Parties' Properties

**{10}** Defendants first argue that the district court "erred [in] determining the fact issue concerning the boundary between [the] two properties instead of the jury deciding the boundary issue." Defendants' presentation of the issue is both unclear and confusing; the location of the boundary was common to Defendants' counterclaims for trespass (a cause of action at common law for the jury to decide) and to quiet title (a claim at equity to be decided by the district court, *see* NMSA 1978, § 42-6-9 (1907) (deeming actions to quiet title to be equitable in nature)). *See also Pankey v. Ortiz*, 1921-NMSC-007, ¶¶ 38-43, 26 N.M. 575, 195 P. 906 (Roberts, C.J., specially concurring) (noting that actions for ejectment at common law would only decide the right to possession at a single point in time, while an action to quiet title would conclusively determine the parties' title to the land in question). Since the only occasion for the jury (rather than the district court sitting in equity) to decide the boundary issue was Defendants' trespass counterclaims, the question is not whether the district court erred in determining the boundary, but whether it erred in granting a directed verdict on those claims (Defendants' second issue on appeal). To the extent that Defendants seek to raise a separate issue attacking the manner in which the district court decided their counterclaim to quiet title (Defendants do not appeal or otherwise dispute the district court's decision on the merits of that claim), it is insufficiently developed to warrant our review. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (observing that we do not review unclear or undeveloped arguments that require us to guess at what parties' arguments might be).

### 2. Defendants Cannot Demonstrate Error as to the District Court's Directed Verdict on Defendants' Counterclaims for Trespass

**{11}** A directed verdict is proper when, "after considering all evidence in [the] light most favorable to [the] non[-]moving party[,] . . . [the] evidence, as [a] matter of law is insufficient to justify [a] verdict in [the non-moving] party's favor[.]" *Melnick v. State Farm Mut. Auto.*

4

*Ins. Co.*, 1988-NMSC-012, ¶ 10, 106 N.M. 726, 749 P.2d 1105 (citing J. Walden, Civil Procedure in New Mexico § 9c(2)(a), at 225 (1973)). In this case, the district court entered a directed verdict on Defendants' counterclaim for trespass because it concluded there was no evidence that could support a finding of actual damages in Defendants' favor.

**{12}** Defendants suggest that even if there was insufficient evidence to put the question of actual damages caused by Plaintiffs' alleged trespass to the jury, Defendants' counterclaim for trespass should have been submitted to the jury for consideration of an award of nominal damages. Thus, Defendants argue that proof of actual damages is not a necessary element of a claim for trespass, and the district court's directed verdict was erroneous because it was based upon a contrary conclusion. Indeed, nominal damages are available in actions for trespass. *See Atchison, T. & S.F. Ry. Co. v. Richter*, 1915-NMSC-008, ¶ 36, 20 N.M. 278, 148 P. 478; *see also* Restatement (Second) of Torts § 163 cmt. d (1965) ("[E]ven a harmless entry or remaining, if intentional, is a trespass."). Put differently, proof of damage is not an element of trespass; all that the plaintiff must show is that the defendant entered the plaintiff's land without authorization, remains on the land, or fails to remove from the land a thing which the defendant has a duty to remove. *See* Restatement (Second) of Torts § 158 (1965). It follows, then, that the district court erred in concluding that Defendants' failure to prove actual damages precluded submission of their counterclaim for trespass to the jury.

**{13}** But Defendants' trial strategy involved pursuing actual damages for damage they alleged Plaintiffs had caused by installing a fence on their property, not an award of nominal damages. Accordingly, Defendants failed to preserve this issue as a basis for reversal on appeal. "To preserve a question for review it must appear that a ruling or decision by the district court was fairly invoked, but formal exceptions are not required, nor is it necessary to file a motion for a new trial to preserve questions for review." Rule 12-216(A) NMRA. "In analyzing preservation, [the appellate courts] look to the arguments made by [the d]efendant below." *State v. Vandenberg*, 2003-NMSC-030, ¶ 52, 134 N.M. 566, 81 P.3d 19. "To preserve an issue for review on appeal, it must appear that [the] appellants fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 1987-NMCA-133, ¶ 20, 106 N.M. 492, 745 P.2d 717.

> The primary purposes for the preservation rule are: (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue.

*Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791.

**{14}** Here, Defendants never sought nominal damages in their answer and counterclaim;

instead, Defendants' counterclaim sought "the value of the damage" caused by Plaintiffs' alleged trespass only. At trial, Defendants opposed Plaintiffs' motion for a directed verdict by arguing solely that Defendants had introduced sufficient evidence of actual damages. Defendants did not request a nominal-damages instruction, mention the availability of nominal damages in their response to Plaintiffs' motion for a directed verdict, or otherwise argue to the district court that Defendants were not obliged to prove that they were damaged by Plaintiffs' alleged trespass. In these circumstances, we conclude that Defendants failed to specifically alert the district court to the availability of nominal damages for trespass claims below, a prerequisite to preserving a question of law for review in this Court. Accordingly, we decline to reverse the district court's dismissal of Defendants' counterclaim for trespass on a ground Defendants advance for the first time on appeal. *See Woolwine*, 1987-NMCA-133, ¶ 20.

**{15}** Next, Defendants argue that their submission into evidence of photographs showing damaged vegetation furnished a basis for the jury to fix an award of damages, rendering the district court's directed verdict on Defendants' counterclaim for trespass erroneous. But the mere fact of damage is not enough to give rise to a question of fact over the extent of actual damages that must be resolved by the jury; Defendants were required to submit additional evidence that would allow the jury to fix the amount of damages Defendants suffered as a result of the alleged trespass with enough certainty to avoid speculation. *See Mascarenas v. Jaramillo*, 1991-NMSC-014, ¶ 22, 111 N.M. 410, 806 P.2d 59 ("Damages based on surmise, conjecture or speculation cannot be sustained. Damages must be proved with reasonable certainty."). Thus Defendants were required to submit evidence that would allow the jury to fix an amount of damage, such as the cost of restoring the vegetation damaged by Plaintiffs' installation of the fence, *see* UJI 13-1813 NMRA, or by producing evidence that Plaintiffs' alleged trespass caused some diminution in the value of Defendants' property, *see* UJI 13-1812 NMRA. Having failed to present any such evidence, it was not error for the district court to conclude that the evidence was insufficient as a matter of law to support a finding that Defendants had suffered damages as a result of Plaintiffs' alleged trespass.

**3.    The District Court Did Not Err in Refusing Defendants' Requested Jury Instruction on Plaintiffs' Trespass Claim**

**{16}** "We review a district court's refusal to give a proffered instruction de novo to determine whether the instruction correctly stated the law and was supported by the evidence presented at trial." *Silva v. Lovelace Health Sys., Inc.*, 2014-NMCA-086, ¶ 13, 331 P.3d 958. "A party is entitled to have the jury instructed on the party's theory if there is substantial evidence to support it." *Id.* "Failure to submit requested instructions to the jury constitutes reversible error, if the complaining party can show that it was prejudiced by the trial court's refusal to give the requested instruction." *Benavidez v. City of Gallup*, 2007-NMSC-026, ¶ 19, 141 N.M. 808, 161 P.3d 853.

**{17}** Defendants requested the following jury instruction, apparently modeled on the text of Section 30-14-6:

6

The owner of real property in New Mexico shall post notices parallel to and along the exterior boundaries of the property to be posted, at each roadway or other access in conspicuous places, and if the property is not fenced, such notices shall be posted every [500] feet along the exterior boundaries of such land. If property is not fenced or notices posted delineating boundary lines of property, willful trespass cannot be proved.

{18}     Defendants argued to the district court that Section 30-14-6 imposed a duty on landowners to post notices on the exterior boundaries of their property in order to subject individuals to trespass liability for any entries thereon. Plaintiffs argued that Defendants' proffered instruction should not be given because Section 30-14-6 set out a defense to charges of criminal trespass under Section 30-14-1, not civil liability for trespass.

{19}     The district court agreed with Plaintiffs that Defendants' proffered instruction was not a valid defense to liability for trespass at common law. However, the district court concluded that the instruction was required because Plaintiffs sought double damages against Defendants under Section 30-14-1(D). In response to the district court's interlocutory ruling, Plaintiffs voluntarily dismissed their claim for criminal trespass, at which point the district court refused to submit Defendants' proffered instruction to the jury. Defendants argue on appeal that Section 30-14-6 "imposes a civil duty on the part of landowners seeking criminal prosecution or civil damages for trespass[,]" and as a result, civil liability for trespass may only be found for entries on land that has been posted in compliance with Section 30-14-6.

{20}     Whether Section 30-14-6 bars civil liability for trespass unless a landowner complies with its posting requirements (and is thus available as a jury instruction in a civil action for trespass) is a question of statutory construction that we review de novo. *See State v. Marshall*, 2004-NMCA-104, ¶ 6, 136 N.M. 240, 96 P.3d 801. In construing a statute, "[o]ur primary task in construing statutory language is to effect legislative intent." *Benny v. Moberg Welding*, 2007-NMCA-124, ¶ 5, 142 N.M. 501, 167 P.3d 949.

> We start with the language [of the statute] itself, giving effect to its plain meaning where appropriate while being careful not to be misled by simplicity of language when the other portions of a statute call its meaning into question, or the language of a section of an act conflicts with an overall legislative purpose.

*Id.* (internal quotation marks and citation omitted). We also note that "when determining the meaning of a statute, courts will often construe the language in light of the preexisting common law." *Sims v. Sims*, 1996-NMSC-078, ¶ 23, 122 N.M. 618, 930 P.2d 153. "This rule of construction is a recognition that any law is passed against the background of all the law in effect at the time. If no aspect of the background of law is clearly abrogated, it is presumed to be consistent with, if not incorporated into, new legislation." *Id.* ¶ 24.

{21}     Section 30-14-6(A) states:

The owner, lessee or person lawfully in possession of real property in New Mexico, except property owned by the state or federal government, desiring to prevent trespass or entry onto the real property shall post notices parallel to and along the exterior boundaries of the property to be posted, at each roadway or other way of access in conspicuous places, and if the property is not fenced, such notices shall be posted every [500] feet along the exterior boundaries of such land.

The text of Section 30-14-6(A) does not suggest any limitation on an owner, lessee, or other lawful possessor's ability to pursue a common law claim for trespass; rather, it speaks to what the owner, lessee, or other lawful possessor should do in order to "prevent" trespass. We interpret the use of the word "prevent" in Section 30-14-6(A) to indicate the Legislature's intent to establish a standard by which the public may be placed on direct notice that unauthorized entry upon posted land is disallowed and will be subjected to legal consequences, not an intent to exempt from liability all unauthorized entries onto private property that has not been posted.

{22}    Considering Section 30-14-6 in light of neighboring provisions in the Criminal Code supports our interpretation. Section 30-14-1 defines differing types of criminal trespass, each of which is a misdemeanor. *See* § 30-14-1(E). For example, Subsection A includes, with certain exceptions, "knowingly entering or remaining upon posted private property without possessing written permission from the owner or person in control of the land" as criminal trespass. Subsections B and C, respectively, prohibit "knowingly entering or remaining upon the unposted lands of another knowing that such consent to enter or remain is denied or withdrawn by the owner or occupant thereof" and "knowingly entering or remaining upon lands owned, operated or controlled by the state or any of its political subdivisions knowing that consent to enter or remain is denied or withdrawn by the custodian thereof" as misdemeanor criminal trespass. Lastly, Subsection D provides that "[a]ny person who enters upon the lands of another without prior permission and injures, damages or destroys any part of the realty or its improvements . . . is guilty of a misdemeanor, and he shall be liable to the owner, lessee or person in lawful possession for civil damages in an amount equal to double the value of the damage to the property injured or destroyed."

{23}    Reading these provisions as a whole, it is clear that Section 30-14-6 sets out a standard by which a property may be deemed "posted" for the purposes of determining whether a defendant may be found guilty for knowingly entering property under Section 30-14-1(A) or if the elevated mens rea requirement in Section 30-14-1(B) must be proven. Section 30-14-6 cannot be fairly read to change the common law of trespass, which does not require posting of property in order for an unauthorized entry to constitute a trespass. *See Sims*, 1996-NMSC-078, ¶¶ 23-24. Moreover, Section 30-14-1(D), which imposes double civil liability on any person who "enters upon the lands of another without prior permission and injures, damages or destroys any part of the realty or its improvements," makes no mention of whether the property is posted or unposted. Viewed against these provisions, then, it is clear that Section 30-14-6 does not provide an affirmative defense to common law

8

claims for trespass. Accordingly, the district court correctly rejected Defendants' proffered instruction.

**4.      Sufficient Evidence Supports the Jury's Damage Award on Plaintiffs' Trespass Claim**

**{24}**     "On appeal, a jury award will not be set aside as excessive, unless: [(1)] the evidence, viewed in the light most favorable to the plaintiff, does not substantially support the award; or [(2)] there is an indication that the jury was swayed by passion or prejudice, or employed a mistaken measure of damages." *Wirth v. Commercial Res., Inc.*, 1981-NMCA-057, ¶ 18, 96 N.M. 340, 630 P.2d 292. When we review an award for substantial evidentiary support, "the question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Muncey v. Eyeglass World, LLC*, 2012-NMCA-120, ¶ 21, 289 P.3d 1255 (alteration, internal quotation marks, and citation omitted). "Additionally, we will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder." *Id.* (alteration, internal quotation marks, and citation omitted).

**{25}**     Defendants argue that the jury's damages award was not supported by substantial evidence because the damage caused by flooding in 2010 occurred upstream of the berms Lucero made on Plaintiffs' property at Defendants' direction. We understand Defendants to be arguing that there was insufficient evidence at trial for the jury to conclude that the flood damage was caused by Defendants' earthwork. But Plaintiffs presented expert testimony that Defendants' earthwork increased the likelihood of flood damage and likely brought about the erosion caused by the 2010 floods. Having failed to object to the admission of this testimony, Defendants' argument boils down to a request that we reweigh the evidence presented to the jury, something we are forbidden from doing under the applicable standard of review. *See N.M. Taxation & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 23, 336 P.3d 436. Nor do Defendants offer any authority in support of their contention that the jury was not permitted to award Plaintiffs damages for the cost of making improvements to prevent future flood damage in addition to the cost of shoring up the foundation of their driveway. "[W]here arguments in briefs are unsupported by cited authority, [we assume that] counsel[,] after diligent search, was unable to find any supporting authority." *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. After reviewing the evidence in the trial record, we conclude the jury's damages award had a substantial evidentiary basis.

**5.      The District Court Did Not Abuse Its Discretion in Awarding Prejudgment Interest to Plaintiffs**

**{26}**     Section 56-8-4(B) provides that a district court may award prejudgment interest to the prevailing plaintiff in an amount of

> up to [10] percent from the date the complaint is served upon the defendant
> after considering, among other things:

9

     (1) if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and

     (2) if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.

Prejudgment interest is available in actions in tort. *Southard v. Fox*, 1992-NMCA-045, ¶¶ 1, 8, 113 N.M. 774, 833 P.2d 251. We review a district court's award of prejudgment interest for an abuse of discretion. *Gonzales v. Surgidev Corp.*, 1995-NMSC-036, ¶ 58, 120 N.M. 133, 899 P.2d 576.

**{27}**   The district court awarded Plaintiffs prejudgment interest on the principal amount of the judgment against Defendants at the rate of 8.75 percent per annum from the date of the filing of the complaint to the date of the judgment against Defendants for a total amount of $12,177.05. Defendants argue that the district court abused its discretion in awarding prejudgment interest because Defendants had made reasonable and timely settlement offers prior to trial. Plaintiffs argue that the district court properly awarded Plaintiffs prejudgment interest because Defendants failed to make a reasonable and timely settlement offer to Plaintiffs.

**{28}**   It is difficult to evaluate Defendants' argument because their brief in chief does not identify the timing and amount of the settlement offers they purportedly made to Plaintiffs, and the district court's oral statement of its reasons for awarding prejudgment interest is not part of the record. However, "where [the] record is unclear, we presume regularity and correctness of the district court's actions." *Murken v. Solv-Ex Corp.*, 2006-NMCA-064, ¶ 27, 139 N.M. 625, 136 P.3d 1035. Defendants argue that because the district court had evidence of a settlement offer by Defendants, it was an abuse of discretion to grant prejudgment interest. But Section 56-8-4(B) makes the existence of a settlement offer but one factor in the totality that is to be considered by the district court in determining whether to award prejudgment interest, and even then, only if the offer is "reasonable." Defendants offer no argument as to why their prejudgment settlement offers were reasonable. A conclusory statement that the district court ought to have credited Defendants' argument that their offers were reasonable is not enough to overcome the presumption that the district court properly found either that Defendants' settlement offers were not reasonable or that other factors counseled in favor of an award of prejudgment interest.

**6.     Defendants Failed to Preserve Their Argument That They Enjoyed a Prescriptive Easement Over the Wash**

**{29}**   Defendants finally argue that they enjoyed an easement by prescription over the portion of the wash that crossed Plaintiffs' property that gave Defendants the right to enter and perform work on the wash. But Defendants never argued the existence of a prescriptive easement either as a counterclaim or a defense to Plaintiffs' trespass claim, and we do not address arguments raised for the first time on appeal. *See Campos Enters., Inc. v. Edwin K.*

10

*Williams & Co.*, 1998-NMCA-131, ¶ 12, 125 N.M. 691, 964 P.2d 855. We therefore decline to address the merits of Defendants' argument.

**7.    The District Court Abused Its Discretion in Refusing to Award Post-Judgment Interest at the Mandatory Rate Fixed by Section 56-8-4(A)(2)**

**{30}**    In their cross-appeal, Plaintiffs contend that the district court abused its discretion when it fixed its award of post-judgment interest at 8.75 percent per annum because Section 56-8-4(A)(2) requires district courts to impose post-judgment interest at a rate of 15 percent for any judgment based on "tortious conduct," and trespass is a tort. Defendants respond that because there was no evidence that Defendants' trespass was intentional, Section 56-8-4(A)(2) does not apply.

**{31}**    Section 56-8-4(A)(2) provides that "[i]nterest shall be allowed on judgments and decrees for the payment of money from entry and shall be calculated at the rate of [8.75] percent per year, unless . . . the judgment is based on tortious conduct, bad faith or intentional or willful acts, in which case interest shall be computed at the rate of [15] percent." "[A]n award of post[-]judgment interest is mandatory and is to be computed at the statutory rate." *Sunwest Bank of Albuquerque, N.A. v. Colucci*, 1994-NMSC-027, ¶ 25 n.7, 117 N.M. 373, 872 P.2d 346. "We review the award of post-judgment interest for abuse of discretion." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 74, 146 N.M. 853, 215 P.3d 791. "A court can abuse its discretion by misapprehending or misapplying the law." *Id.*

**{32}**    We agree with Plaintiffs that the district court abused its discretion by refusing to award Plaintiffs post-judgment interest at 15 percent. In *Sandoval*, we considered and rejected Defendants' argument that Section 56-8-4(A)(2)'s 15 percent post-judgment interest rate only applies to judgments based on intentional torts. *See id.* ¶¶ 73-78. There, we held that the plain meaning of Section 56-8-4(A)(2)'s use of the word "tortious" made all judgments based on torts subject to a 15 percent post-judgment interest rate—even negligence, which has no intent or recklessness elements. *Sandoval*, 2009-NMCA-095, ¶ 78. Since trespass is a tort, *see McNeill v. Rice Engineering & Operating, Inc.*, 2010-NMSC-015, ¶ 9, 148 N.M. 16, 229 P.3d 489, it is subject to a 15 percent rate of post-judgment interest. We therefore reverse the district court's award of post-judgment interest and remand with instructions to award Plaintiffs post-judgment interest at a rate of 15 percent per annum.

**CONCLUSION**

**{33}**    We reverse the district court's award of post-judgment interest to Plaintiffs and remand this case with instructions to the district court that it impose an award of post-judgment interest on the judgment against Defendants at a rate of 15 percent. The district court's judgment is affirmed in all other respects.

**{34}    IT IS SO ORDERED.**

11

                                          _____
                                          **J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**M. MONICA ZAMORA, Judge**