The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: September 18, 2025

**No. A-1-CA-41385**

**KEVIN HOESCHEN, Personal Representative of the ESTATE OF JASON HOESCHEN, Deceased; JOHN MILLS and REBECCA MILLS, Individually and as Next Friend and Natural Parents of LOGAN MILLS, a minor,**

      Plaintiffs-Appellees,

v.

**NEW MEXICO DEPARTMENT OF TRANSPORTATION,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Maria Sanchez-Gagne, District Court Judge**

The Law Offices of Brian K. Branch
Brian K. Branch
Albuquerque, NM

Law Office of Eva K. Blazejewski
Eva K. Blazejewski
Albuquerque, NM

Lobo Law Firm LLC
Heather K. Hansen
Albuquerque, NM

Stalter Law LLC
Kenneth H. Stalter
Albuquerque, NM

for Appellees

Ripley B. Harwood, P.C.
Ripley B. Harwood
Albuquerque, NM

for Appellant

**OPINION**

**HANISEE, Judge.**

{1}     This appeal arises from a fatal collision on a highway during a winter storm. Plaintiffs Kevin Hoeschen, as personal representative of the estate of Jason Hoeschen, deceased, and John and Rebecca Mills, individually and next friend and natural parents of Logan Mills, a minor, sued Defendant New Mexico Department of Transportation under the New Mexico Tort Claims Act (NMTCA), NMSA 1978, §§ 41-4-1 to -30 (1976, as amended through 2020), on the theory of negligent road maintenance, and a jury awarded a several-million-dollar verdict in Plaintiffs' favor. Defendant appeals, asserting various arguments, including that notice under the NMTCA was inadequate to confer subject matter jurisdiction on the district court, the verdict was based on insufficient evidence, the district court abused its discretion in the admission and prohibition of certain evidence, and the district court erred in its selection of jury instructions. We affirm.

**BACKGROUND**

{2}     On a December night during a winter storm, Jason Hoeschen and John Mills were driving a moving truck while towing a car on a car trailer on I-40 when they lost control of the moving truck. It overturned on its side, detaching the car trailer. Unharmed, the two exited the vehicle through the driver's side window. Shortly thereafter, a semitruck lost control on the same patch of highway and struck the

detached car trailer, thereby disconnecting the car it had been carrying. Tragically, yet another semitruck lost control in the same area soon after and struck both men, who were then on the shoulder of the highway. Jason Hoeschen died from his injuries and John Mills was severely injured.

{3} Defendant contends on appeal that Plaintiffs did not comply with the NMTCA notice requirements and thus the district court lacked subject matter jurisdiction; the evidence was insufficient to support the verdict; the lack of expert testimony prevented the jury from basing the standard of care, causation, and verdict on anything other than speculation; and the district court committed errors related to the admission and exclusion of evidence and to jury instructions. We address each contention in turn.

**DISCUSSION**

**I.     Notice Under the NMTCA**

{4} Defendant's first argument challenges whether Plaintiffs' notice letter complied with the NMTCA and New Mexico law interpreting it. The NMTCA requires "written notice stating the time, place and circumstances of the loss or injury." Section 41-4-16(A). Plaintiffs sent timely notice to Defendant that "on or about December 28, 2019[,] at mile marker 238, [e]astbound I-40 (near Clines Corners, New Mexico)," "a semi[]truck damaged [a] highway guardrail, causing injuries that led to [Jason Hoeschen]'s death" and "[John Mills]'s catastrophic

injuries." Plaintiffs suggested in this notice letter that the guardrail may have been damaged or kept in poor condition prior to the accident and notified Defendant of impending litigation against them. Defendant argues that Plaintiffs "actively mis[led]" Defendant by omitting from this notice letter information regarding weather conditions and road maintenance—the only theory that Plaintiffs eventually pursued in their complaint—and by not pursuing the guardrail theory they described in their notice letter. According to Defendant, this mismatch failed to satisfy the "circumstances" requirement under the NMTCA. Defendant therefore argues that the case should have been dismissed outright because the district court lacked subject matter jurisdiction to hear a case in which notice requirements under the NMTCA were not met.

{5}    A district court's decision regarding compliance with the NMTCA's notice requirements is reviewed de novo. *See Cummings v. Bd. of Regents of Univ. of N.M.*, 2019-NMCA-034, ¶ 16, 444 P.3d 1058; *Soon v. Kammann*, 2024-NMSC-018, ¶ 11, 557 P.3d 104 ("Statutory interpretation is an issue of law, which we review de novo." (internal quotation marks and citation omitted)). As identified by our Supreme Court, there exist four legislative purposes of the NMTCA's notice requirement: "(1) to enable the person or entity to whom notice must be given, or its insurance company, to investigate the matter while the facts are accessible; (2) to question witnesses; (3) to protect against simulated or aggravated claims; and (4) to consider

whether to pay the claim or to refuse it." *Martens v. City of Albuquerque*, 2025-NMSC-018, ¶ 29, 572 P.3d 942 (internal quotation marks and citation omitted). "Under the [NM]TCA, defendants have the burden of proving that the notice requirement was not met." *Id.* ¶ 13 (alteration, internal quotation marks, and citation omitted). One way to indicate that the notice requirement was not met is to show that there was a "critical difference between the [n]otice and the complaint" or a "*lack* of correlation" between the two. *Id.* ¶ 21. Put simply, notice is sufficient when there is a "*correlation* between the allegations in a written notice and allegations in a lawsuit's complaint." *Id.* ¶ 20.

{6}     Defendant cites several New Mexico cases in attempt to show that Plaintiffs did not include sufficient detail about the "circumstances" requirement in their notice. None of the cited cases are apposite. Defendant argues that Plaintiffs never explained how the negligently maintained guardrail mentioned in the notice letter caused Plaintiffs' loss and that Plaintiffs instead proceeded with a different theory: that negligent maintenance of the road during a weather event was the cause of Plaintiffs' loss. Defendant argues that this omission from the notice letter of details about road conditions shows that Plaintiffs failed to meet the requirements of notice under the NMTCA, according to *Powell v. New Mexico State Highway and Transportation Department*. 1994-NMCA-035, ¶¶ 3, 13, 117 N.M. 415, 872 P.2d 388. However, *Powell* says nothing of stating one claim but bringing another.

Instead, it deals with a notice method—a crash report—that made no mention of *any* claim and failed to inform the agency that litigation was contemplated. This Court therefore held the crash report to be "insufficient as a matter of law to provide actual notice of [the p]laintiff's potential claim against [the defendants]." *Id.* ¶ 13. *Powell* does not support Defendant's argument because here Plaintiffs *did* mention that claims would be brought against Defendant and gave at least some indication of what those claims might be when they included the time, place, and circumstances—even if only some circumstances—of the fatal collision. That Plaintiffs did not identify in their notice letter the specific theory later pursued in their complaint is not fatal to the propriety of Plaintiffs' notice. We do not believe that Section 41-4-16(A) was intended to foreclose the development of new legal theories, which may come to light based on additional factual investigation related to the disclosed circumstances or legal research after the ninety-day deadline for submitting the required notice has expired.

{7}     Furthermore, as Plaintiffs indicate, our Supreme Court does not require the dogged specificity regarding circumstances or claims that Defendant suggests. Nor are the plain meaning of the NMTCA and the four legislative purposes of the NMTCA's notice requirements ignored or misconstrued by Plaintiffs' notice. Rather, in a case where a party made adjustments between the notice and the complaint—there, by homing in on a specific theory of negligence in the complaint

after referring only generally to tortious conduct in the notice—our Supreme Court held that "[t]he written notice required by Section 41-4-16(A) is limited to the time, place, and circumstances of the loss or injury. Nothing more is required." *Martens*, 2025-NMSC-018, ¶¶ 18, 25 (internal quotation marks and citation omitted). As mentioned, notice is sufficient when there is a "*correlation* between the allegations in a written notice and allegations in a lawsuit's complaint," *id.* ¶ 20, and a party can show that notice was insufficient by demonstrating either "a *lack* of correlation" or "a critical difference between the [n]otice and the complaint." *Id.* ¶ 21. Defendant has demonstrated neither, and we are not persuaded that Plaintiffs' notice undermined any of the purposes of the NMTCA's notice requirements.

{8}	Having concluded that Defendant failed to demonstrate a lack of correlation or a critical difference between the notice letter and complaint, we secondly point out the obvious correlation between the information supplied in the notice letter and the allegations in Plaintiffs' complaint. Specifically, the notice letter supplied pertinent facts about the circumstances surrounding the accidents: a semitruck, a damaged guardrail, death, and injuries. Considering the notice's specific identification of the time and place, and a specified incident along the highway and in the middle of winter that led to catastrophic results, it could not be difficult for Defendant to construe the notice letter to suggest that winter weather may have played a role. Thus the details regarding time, place, and circumstances in Plaintiffs'

notice letter suffice and serve the purposes of the notice requirements. To hold otherwise would effectively construe Section 41-4-16(A) to artificially impose some sort of premature statute of limitations on causes of action not enumerated in the tort claims notice. Therefore, we hold that the notice was sufficient to alert Defendant to Plaintiffs' intent to file a complaint involving the Defendant's role in causing Plaintiffs' serious injuries and that the district court had subject matter jurisdiction to hear the case.

## II.      Sufficiency of the Evidence

## A.      Notice of Dangerous Conditions

{9}      Defendant argues that there was insufficient evidence as to whether Defendant had actual or constructive notice of a dangerous condition on the at-issue stretch of highway. To challenge the sufficiency of the evidence supporting a verdict, a party must move for judgment as a matter of law before the case is submitted to the jury. *See* Rule 1-050(A) NMRA. Defendant failed to move for judgment as a matter of law on these grounds and thus did not properly preserve the issue for appeal. *See First Nat'l Bank in Albuquerque v. Sanchez*, 1991-NMSC-065, ¶ 6, 112 N.M. 317, 815 P.2d 613 ("[T]he sufficiency of the evidence to support a jury verdict is not reviewable on appeal in the absence of a motion for directed verdict at the close of all the evidence.").

{10} To circumvent this procedural requirement, Defendant contends that the issue is of general public interest. *See* Rule 12-321(B)(2)(a) NMRA. But Defendant does not show how the "circumstances under which Defendant may be held liable for the dangerous condition of snow and ice accumulation on roadways during winter storm events" is of general public interest beyond simply saying so, and we will not provide the support needed. *See State ex rel. Foy v. Vanderbilt Cap. Advisors, LLC*, 2022-NMCA-026, ¶ 27, 511 P.3d 329 ("This Court will not search the record to find evidence to support an appellant's claims." (alteration, internal quotation marks, and citation omitted)). We therefore do not address this unpreserved issue. *See Crutchfield v. N.M. Dep't of Tax'n & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("Absent that citation to the record [to an invoked ruling such as a motion for judgment as a matter of law] or any obvious preservation, we will not consider the issue.").

**B.    Expert Testimony to Establish the Standard of Care**

{11} Defendant argues that expert testimony was required to establish the standard of care applicable to Defendant under the circumstances of the collision. This Court reviews de novo whether expert testimony was required as a matter of law. *United Parcel Serv., Inc. v. N.M. Tax'n & Revenue Dep't*, 2023-NMCA-064, ¶ 21, 535 P.3d 715.

{12} Specifically, Defendant argues that "establishing the standard of care applicable to Defendant in responding to snow and ice weather events affecting state roadways requires expert testimony because it is beyond the ken of the average juror." Yet, as Defendant points out, no precedent exists requiring expert testimony in establishing governmental standards of care in similar circumstances, so we assume none exists. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists.").

{13} Additionally, existing New Mexico case law requires expert testimony only "[i]f the act [alleged to be negligent] involves the use of specialized knowledge or skill" in judging what to do. *Richter v. Presbyterian Healthcare Servs.*, 2014-NMCA-056, ¶ 22, 326 P.3d 50. Plaintiffs contend that common knowledge ruled the day here, arguing that Defendant presented no evidence the employees themselves possessed specialized knowledge that would "place their decision-making beyond a jury's comprehension," and that jurors drive vehicles and are familiar with roadways. Instead of specialized knowledge, Plaintiffs point out, the employees used public weather reports on their cell phones, visual observations, and their best judgment in deciding how to deal with conditions.

{14} We agree that Defendant did not adequately specify what technical expertise was necessary for Defendant's employees to understand either the standard of care

or how to execute it. Defendant, therefore, has not rebutted Plaintiffs' claims that the errors alleged here were errors in judgment and common sense understandable by the average juror. Based on the record in this case and the arguments presented on appeal, we conclude that determining compliance with the standard of care was appropriately presented to and decided by the jury. *See Mott v. Sun Country Garden Prods., Inc.*, 1995-NMCA-066, ¶ 34, 120 N.M. 261, 901 P.2d 192.

**C.      Evidence and Expert Testimony to Establish Causation**

{15}      Defendant argues that its failure to treat the highway where the accidents occurred with salt and cinder was not proven to be the proximate cause of the fatal collision. To support its argument, Defendant first asserts that the jury based its verdict on speculation regarding timing: specifically, that Defendant could have arrived before Plaintiffs and treated the road in time to prevent the accidents. Defendant secondly asserts that expert testimony was required to establish causation, particularly regarding the effects of salt and cinder on roadways during weather events.

{16}      "[W]e review the sufficiency of the evidence to support the verdict by examining whether the verdict is supported by such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 12, 146 N.M. 853, 215 P.3d 791 (internal quotation marks and citation omitted). "[W]e will not reweigh the

evidence nor substitute our judgment for that of the fact[-]finder." *Atler v. Murphy Enters., Inc.*, 2005-NMCA-006, ¶ 13, 136 N.M. 701, 104 P.3d 1092 (internal quotation marks and citation omitted). We review de novo whether expert testimony was required as a matter of law. *United Parcel Servs., Inc.*, 2023-NMCA-064, ¶ 21.

{17} First, Defendant argues that the times of the initial crash and of the two subsequent collisions—which Plaintiffs did not provide—were crucial in determining whether Defendant's employee servicing the area would have made it to the site before Plaintiffs' arrival and in time to salt and cinder the roads. However, the jury *did* hear evidence of Defendant's timeline that could have led to a reasonable inference that the employee had time to both arrive and treat the roads prior to the initial accident. The employee's work log as well as his testimony at trial established that he traveled at a pace of around 30 mph between mile markers 207 and 230. Applying this travel pace eight additional miles to the location of the accidents would have put the employee there just before 11:00 p.m. This potential arrival time results in plenty of room—even enough for that evening's weather conditions—before the initial accident, which, according to the evidence presented to the jury, occurred around 11:40 p.m.

{18} Plaintiffs characterize Defendant's focus on whether its employee could have conceivably arrived and treated the roads prior to the accidents as "myopic," asserting that Defendant ignores "multiple, interconnected failures . . . that

culminated in the dangerous conditions" beyond just one small period wherein roads were not salted or cindered. Plaintiffs point out on appeal that the jury had ample evidence of such failures, including Defendant's time logs indicating the absence of road patrol for eight hours prior to the first crash, even during an ongoing winter storm. The jury saw dashcam footage depicting snowy, icy, and slick road conditions in the area. Several of Defendant's employees testified about their visual observations that the weather was poor and that the roads were wet, in bad condition, and getting worse. The employee servicing the area that night believed the area needed snow and ice removal, but when he called for permission to do so, his supervisor, acknowledging the employee's already-lengthy shift, instructed him to initiate a shift change instead. Beyond this evidence, the fact that *three* accidents occurred at essentially the same point on the highway and within minutes of each other is further evidence supporting the jury's verdict that attention to the at-issue stretch of highway was needed but was not given. These details are only some of the evidence the jury received during trial, and we will not reweigh it. We hold that the evidence was sufficient to support the jury's verdict in favor of Plaintiffs. *See Sandoval*, 2009-NMCA-095, ¶ 12.

{19} Defendant goes on to argue that Plaintiffs neglected to provide expert testimony that salt and cinder would have prevented the accidents, claiming once again that expert testimony was essential for such a "highly technical fact-bound

issue[]" that was "beyond the ken of the average lay person." Plaintiffs respond that, similar to the discussion on the standard of care above, Defendant did not show how such matters were beyond jury comprehension to the extent that expert testimony was required. *See Mott*, 1995-NMCA-066, ¶ 34. In Plaintiffs' view, and we agree, the following issues were well within the territory of common knowledge and therefore appropriately considered by the jury: snow and ice create hazardous driving conditions, salt and cinder application improves traction and reduces accident risk, and multiple vehicles losing control in the same location suggest site-specific hazards.

{20}    Finally, the jury *did* hear expert testimony on causation. An accident reconstructionist testified as Plaintiffs' witness that snowy and icy roadways contributed to the drivers' loss of control. We agree with Plaintiffs that the jury received a proper evidentiary showing of causation, even without additional expert testimony, and find no basis to reverse the verdict. *Cf. Paez v. Burlington N. Santa Fe Ry.*, 2015-NMCA-112, ¶ 14, 362 P.3d 116 ("Without a proper evidentiary showing of causation, [the p]laintiffs' negligence claim fails.").

**III.    Winter Maintenance Guide**

{21}    During trial, Plaintiffs introduced, and the district court admitted, Defendant's "Winter Maintenance Guide" (the Guide), which provided specific operational standards for road maintenance, established storm classifications, identified

highway route priorities, and assigned a minimum level of service to various highway-storm combinations. The Guide instructed maintenance employees how to conduct road patrol and other services and recommended that they review the Guide at the start of each winter season. Defendant argues that the district court erred in admitting the Guide. We review evidentiary rulings for an abuse of discretion. *Progressive Cas. Ins. Co. v. Vigil*, 2018-NMSC-014, ¶ 13, 413 P.3d 850.

{22}    Defendant claims that while industry standards are relevant and admissible when determining the standard of care, agency guidelines are not the same as industry standards and are themselves irrelevant. *See* UJI 13-1405 NMRA ("Compliance with [industry standards] is evidence of ordinary care, but it is not conclusive."). But Defendant cites no precedent that supports this argument, instead couching as an issue of first impression and general public interest the notion that agency guidelines should not be used as purported evidence of a departure from the standard of care. Rule 12-321(B)(2)(a). Defendant also characterizes the Guide's admission as unfairly prejudicial and therefore inadmissible under Rule 11-403 NMRA because the Guide lacked "the broad-based, industry-wide consensus that is key to [industry standards'] evidentiary reliability and . . . admissibility."

{23}    We are not persuaded that reversible error occurred or that the district court abused its discretion by determining that the Guide was relevant to the standard of care for winter road maintenance and that the probative value of the Guide was not

substantially outweighed by any danger of unfair prejudice. *See* Rule 11-403; *Deaton v. Gutierrez*, 2004-NMCA-043, ¶ 31, 135 N.M. 423, 89 P.3d 672 ("[I]n the absence of prejudice, there is no reversible error." (alteration, internal quotation marks, and citation omitted)); *Hall v. City of Carlsbad*, 2023-NMCA-042, ¶ 5, 531 P.3d 642 ("On appeal, there is a presumption of correctness in the rulings and decisions of the district court, and the party claiming error must clearly show error." (internal quotation marks and citation omitted)). The Guide is simply a mechanism by which employees know the minimum standard protocols of winter road maintenance. Therefore, it seems not only relevant to a jury's decision of what the standard of care is and whether such was breached but also far from something that would lead to an improper or emotional decision. Our holding does not imply that agency guidelines automatically establish a standard of care or that violation of agency standards necessarily constitutes negligence, because such would be contrary to established New Mexico law. *See Grassie v. Roswell Hosp. Corp.*, 2011-NMCA-024, ¶ 77, 150 N.M. 283, 258 P.3d 1075 ("The [agency guidelines are] evidence of a standard the [h]ospital set for itself. But a failure to follow [them] may or may not be negligent when viewed in the context of the entire [circumstance]."). We hold that the district court did not abuse its discretion in admitting the Guide.

## IV. Jury Instructions

## A. Settlement Jury Instructions

{24} Defendant claims that the district court abused its discretion by not admitting settlement evidence through a proposed settlement jury instruction. This Court reviews a district court's decision "to instruct the jury on the fact of settlement for [an] abuse of discretion." *Fahrbach v. Diamond Shamrock, Inc.*, 1996-NMSC-063, ¶ 1, 122 N.M. 543, 928 P.2d 269.

{25} Before and during trial, Defendant proposed a jury instruction that acknowledged a settlement with the trucking company involved in the second collision and directed the jury to not speculate about "the reasons for or the amount of settlement." On appeal, Defendant argues that the district court's rejection of this instruction allowed the jury to infer that Defendant was the sympathetic Plaintiffs' "last and only hope for recompense" and base their decision on "bias" and "prejudicial speculation" against Defendant. Plaintiffs respond that Defendant failed to show that omitting settlement evidence prejudiced Defendant either during trial or on appeal. They further argue that the *Fahrbach* instruction given during trial (which informed jurors that they would "evaluate the relative liability of a number of persons and entities, some who are parties in this case and some who are not," and instructed them not to "speculate about the reasons why certain individuals or corporations are not parties in this case") mitigated any potential jury confusion as

to whether Plaintiffs had sued other parties or received settlements from such lawsuits.

{26} We agree with Plaintiffs and view the *Fahrbach* instruction—provided in lieu of settlement evidence or a settlement instruction—used at trial to both appropriately address potential jury confusion and squarely fit within the district court's sound discretion in instructing the jury. *See id.* ¶ 21 (holding a trial court's conclusion regarding admitting settlement evidence as "well within its authority to manage the course of trial").

{27} In light of *Fahrbach* and the district court's broad authority to manage the course of a trial, we view the district court's exclusion of settlement evidence as appropriately within its authority. Adding to our confidence that Defendant was not unduly prejudiced by the lack of a settlement jury instruction is the fact that the record shows that the jury was aware of other tortfeasors: on the special verdict form, the jury allocated 25 percent of the fault to the trucking company and driver from the second collision, had the option of allocating fault to the trucking company and driver from the first collision, and assigned only 40 percent fault to Defendant.

**B.    Other Jury Instructions**

{28} Defendant also asserts that the district court's refusal to give several other proposed jury instructions—negligence per se, duty of pedestrians, and the standard of care for government agencies as affected by budgetary constraints—warrants

reversal. "A party is entitled to instructions on all of [their] correct legal theories of the case if there is evidence in the record to support the theories." *Benavidez v. City of Gallup*, 2007-NMSC-026, ¶ 19, 141 N.M. 808, 161 P.3d 853. "We review jury instructions de novo to determine whether they correctly state the law and are supported by the evidence introduced at trial." *Id.* (internal quotation marks and citation omitted). An erroneous refusal of a requested instruction "does not warrant the reversal of a verdict unless it is inconsistent with substantial justice or affects the substantial rights of the parties." *Sonntag v. Shaw*, 2001-NMSC-015, ¶ 15, 130 N.M. 238, 22 P.3d 1188. We perceive no reversible error here.

{29} First, Defendant proposed jury instructions regarding negligence per se of the truck drivers, and on appeal argues that the district court's refusal to give such instructions was overly prejudicial and not harmless error. However, we agree with Plaintiffs' argument that the district court properly excluded these instructions because negligence per se instructions are appropriate only when a statute or regulation "defines the duty with specificity." *Abeita v. N. Rio Arriba Elec. Coop.*, 1997-NMCA-097, ¶ 21, 124 N.M. 97, 946 P.2d 1108. Language such as "extreme caution" is too vague and subjective to garner an instruction as uncompromising as negligence per se. *See id.* Therefore, the district court not only did not err when it withheld these instructions, but it would have erred had it submitted such legally incorrect instructions to the jury. *See Benavidez*, 2007-NMSC-026, ¶ 19; *Holcomb*

*v. Rodriguez*, 2016-NMCA-075, ¶ 16, 387 P.3d 286 (requiring jury instruction to "correctly state[] the law" (internal quotation marks and citation omitted)). Furthermore, Defendant did not provide any evidence that the absence of this proposed jury instruction prejudiced them beyond the mere claim that it did. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

{30} Defendant's second proposed and rejected instruction that it asserts warrants reversal revolves around the duty of pedestrians. Defendant argues that the fact that Plaintiffs walked at night along a snow-covered and icy highway, close enough to traffic to be hit by out-of-control vehicles, required the district court to issue a jury instruction regarding pedestrians' ordinary care for their own safety. However, substantial evidence did not support the inference that Plaintiffs' negligence was any greater than that of an ordinary individual who found themselves stranded on the side of a snowy highway after a vehicle crash. *See Sonntag*, 2001-NMSC-015, ¶ 20 (requiring that jury instructions be "supported by substantial evidence").

{31} Nor did Defendant show how the lack of this proposed jury instruction prejudiced them other than merely claiming so. As Plaintiffs point out, no prejudice arose from the absence of such an instruction because the district court issued the standard ordinary care instruction and because the jury assigned a percentage of

responsibility to one of the pedestrian Plaintiffs—showing that the jury *did* have the opportunity to consider pedestrians' comparative fault when crafting the verdict.

{32} For Defendant to have prevailed on this contention, it must have shown substantial evidence supporting a jury instruction on the duty of pedestrians, *see id.*, that the given instruction was insufficient, *see id.* ¶ 17, and that an error affected its substantial rights, *see id.* ¶ 15. Defendant showed none of these, and we, therefore, find no grounds to reverse the verdict on the basis of the district court's failure to give jury instructions on the duty of pedestrians.

{33} Defendant's third contention on jury instructions relates to its proposed instruction regarding budgetary constraints as a factor in determining governmental duty. This claim of error is closely related to another claim of error made by Defendant—its argument that the district court erred in not allowing evidence "concerning how budgetary and resource allocation factors impact its ability to deliver services, including the snow and ice remediation at issue." We reject both claims of error for similar reasons. At no point during pretrial discovery or at trial did Defendant produce evidence of budgetary and resource constraints or how those constraints played any role in employee decision-making on the night of the accidents. In fact, prior to trial, Plaintiffs moved to preclude evidence about budgetary constraints precisely because their discovery efforts—including requests

to Defendant directly—had uncovered no evidence that limited resources played a role in Defendant's "failure to remediate the areas east of mile marker 230."

{34}    The trial court's exclusion of evidence is left to its "sound discretion." *Coates v. Wal-Mart Stores, Inc.*, 1999-NMSC-013, ¶ 39, 127 N.M. 47, 976 P.2d 999. "Included within that discretion is the trial court's determination of what constitutes relevant evidence." *Roark v. Farmers Grp., Inc.*, 2007-NMCA-074, ¶ 37, 142 N.M. 59, 162 P.3d 896. We acknowledge that "financial limitations" are relevant and admissible in New Mexico tort cases, *see* § 41-4-2(B), but hold that Defendant did not meet the evidentiary threshold required for such evidence to be admitted. Without ever specifying *what* evidence should come in, Defendant failed to show that the evidence was relevant to its defense and that it should be admitted on this basis. *See* Rule 11-403. With such a lack of evidence, the district court could neither decide whether such evidence should come in nor abuse its discretion in denying such evidence.

{35}    Without evidence that budgetary constraints existed and played a role in Defendant's duty of care, a proposed jury instruction thereon was not warranted. Such would have only engendered speculation among the jury. *See State v. Ford*, 2019-NMCA-073, ¶ 8, 453 P.3d 471 ("[O]ur responsibility is to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." (internal quotation marks and citation omitted)). We therefore find no

error in the district court's withholding of jury instructions regarding budgetary constraints.

**CONCLUSION**

{36}    We affirm.

{37}    **IT IS SO ORDERED.**

_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**

_____
**ZACHARY A. IVES, Judge**

_____
**JANE B. YOHALEM, Judge**